ON REHEARING
TYSON, Judge.
This court’s original opinion of July 28, 1987 is hereby withdrawn and held for naught.
*861 The following is substituted for that opinion.
Doris Jean Burns was indicted for first degree assault. The jury found the “appellant guilty of third degree assault.” She was sentenced to one year in the county jail and was ordered to make restitution in the amount of $661.00.
A lengthy discussion of the facts of this case is unnecessary because of our decision to reverse and remand this case for a new trial.
The evidence presented at trial showed that on June 8, 1985, Sherry Lynn Moore was at a bar and ran into a table at which the appellant was sitting. The appellant’s drink spilled and she demanded Moore buy her another drink. The two struggled for a while until the appellant threw a drink at Moore and hit her on the head with the glass. The appellant also beat Moore’s head on the table where the broken glass had fallen. Moore had several cuts on her face.
The appellant stated that Moore tried to hit her with a glass but she blocked it with her hand. The glass broke and cut Moore.
On rebuttal, the State presented the testimony of Donald Gwin. Gwin stated that he was at a bar on January 9, 1986 when the appellant struck him with a glass. As a result, Gwin was completely blind in one eye.
I
During the cross-examination of Gwin, the following occurred:
“Q. All right. Now, sir, you have a financial interest in the outcome of this case, do you not?
“MR. LADNER: I object to that, Your Honor.
"THE COURT: Overruled.
“Q. Do you not, sir?
“A. A financial what, sir?
“Q. Do you have a financial interest in the outcome of this case?
“THE COURT: Have you sued her?
“A. I have sued the club, yes, sir.
“Q. You have sued the club Causeway for a million dollars, have you not?
- “A. I don’t know the figure at all, sir. I have no idea.
“Q. All right. And you have employed the law firm of Cunningham and Bounds?
“A. Yes, sir.
“Q. All right. And have you made the acquaintance of a person by the name of Steve Martino?
“A. Yes, sir.
“MR. LADNER: Judge, I am going to object to this.
“THE COURT: Sustained.
“MR. BRUTKIEWICZ: Judge, I think I have a right to go into that.
“THE COURT: Into who his lawyer is? Sustained.
“MR. BRUTKIEWICZ: Well, at this time, I would like to make a showing. "THE COURT: Go right ahead.
“MR. BRUTKIEWICZ: I think it’s proper to make it—
“THE COURT: Well, if you are trying to elicit it for the jury, go ahead and make it now.
“MR. BRUTKIEWICZ: Well, just make a showing that Steve Martino sits in the courtroom and that he is associated with Cunningham and Bounds and that he prosecuted this case on the last go and, at the time that he prosecuted the case, he was employed by Cunningham and Bounds, the plaintiff’s attorney of this gentleman, and that that would show a financial interest in the outcome of the case in behalf of you and Cunningham and Bounds because of the financial interest—
“THE COURT: I sustain the objection. Go on to something else, please.
“MR. BRUTKIEWICZ: And just to bring to the attention of the Court this gentleman is sitting here in court and— “THE COURT: You have brought it to my attention and I have directed, you to go on to something else. Now, do so.” (R. 119-121)
The appellant contends that the trial judge, by not allowing defense counsel to question Gwin as to whether his lawyer was present in the courtroom, deprived her *862 of her constitutional right to a thorough and sifting cross-examination of the witness.
“The case law of this state has consistently held the institution of a civil suit arising out of the same facts as a criminal prosecution to be within the permissible scope of cross-examination to show bias on the part of the witness. This rule is augmented by the public policy of this state as codified in § 12-21-137, Code 1975, which mandates the right of every party to a ‘thorough and sifting’ cross-examination of the opponent’s witnesses. Riley v. City of Huntsville, 379 So.2d 557 (Ala.1980).
“The general rule, from which the more narrow rule here under consideration evolved, is stated in Green v. State, 258 Ala. 471, 64 So.2d 84 (1953):
“It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony. See also, Morrison v. State, 267 Ala. 1, 100 So.2d 744 (1957):
“In the discharge of its fact finding functions the jury’s search for the truth includes the paramount right to consider a witness’s motivation, and any evidence testing ‘his interest, bias or prejudice’ so as to ‘illustrate or impeach the accuracy of his testimony’ is a competent, material and relevant subject of cross-examination, and the jury’s right to be given such evidence is, of itself, part of the fact finding process. Green v. State, supra. Ex parte Brooks, 393 So.2d 486, 487-88 (Ala.1980). See also Calhoun v. State, 487 So.2d 265 (Ala.Crim.App.1986).
“This rule is not limited to civil suits between the State’s witnesses and the defendant. Reeves v. State, 432 So.2d 543 (Ala.Crim.App.1983), but also includes civil suits between defense witnesses and the prosecuting witness. Gunn v. State, 387 So.2d 280 (Ala.Crim. App.), cert. denied, 387 So.2d 283 (Ala. 1980). Furthermore, this rule includes civil suits which involve third parties. Reeves, supra.”
Moody v. State, 495 So.2d 104, 109 (Ala.Crim.App.), cert. denied, 495 So.2d 110 (Ala.1986).
Although this civil suit filed by Gwin did not arise from the same facts as this criminal prosecution, it involved the same act or conduct by this appellant as the act committed which formed the basis for this prosecution. The State introduced the testimony of Gwin concerning this same conduct of the appellant. Thus, the appellant should have been allowed to question Gwin concerning the fact that his attorney was present in the courtroom and the reasons for his presence therein.
Furthermore, in her brief, the appellant states that she wanted to ask Gwin if he had discussed the case at bar with his attorney and what effect a conviction of the appellant in this case would have on his civil suit. Although the appellant did not make this showing to the court, it is obvious from the record that she was cut off before she had the chance to do so.
It is clear that a witness can be cross-examined as to “whether he has discussed the facts of the case and, if so, with whom and what was said in the discussions.” C. Gamble, McElroy’s Alabama Evidence, § 149.01(7) (3rd ed. 1977).
“Manifestly, the right of an accused to cross examine the witnesses against him is embodied in the confrontation clause of the Sixth Amendment, Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed. 2d 347 (1974). Indeed, ‘cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested,’ Ibid., 415 U.S. at 316, 94 S.Ct. at 1110.
“Although the scope and extent of cross-examination is generally declared to be within the sound discretion of the trial court and not to be interfered with by an appellate court absent an abuse of discretion, Grant v. United States, 5 Cir. 1966, 368 F.2d 658, 661, that discretion must be exercised with due regard for the defendant’s constitutional rights. Specifically, it is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-ex *863 amine a witness at all on a ‘subject matter relevant to the witness’s credibility’, such as the witness’s possible motive for testifying falsely. Davis v. Alaska, supra, 415 U.S. at 318, 94 S.Ct. 1105.
“A more particular attack on the witness’ credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is ‘always relevant as discrediting the witness and affecting the weight of his testimony’. 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness’ motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).”
“Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).”
Moody, supra at 106.
Thus, it was error to limit the appellant’s cross-examination of Gwin. She should have been allowed to propound questions to Gwin which might have revealed his bias or interest in the outcome of this case. Reversible error occurred in this instance.
II
During the cross-examination of the appellant and another defense witness, the State was allowed to elicit, over defense counsel’s objection, testimony that the appellant had lived with her boyfriend and that she had been employed as a nude dancer. The appellant contends this evidence was immaterial, irrelevant and highly prejudicial. We must agree.
“A witness may not be impeached by another’s testimony as to specific bad acts of the witness which have no relevancy except as to show the witness' bad character.” McElroy's, supra at § 140.01(9).
Furthermore, “[a] witness may not be cross-examined for impeachment as to specific acts of misconduct by him which have no relevancy except as tending to show that he is a person of bad character as a whole ...” McElroy’s, supra at § 140.01(10). See also McElroy’s, supra at § 26.01(1).
The evidence concerning the fact that the appellant lived with her boyfriend and engaged in nude dancing was solely for the purpose of showing the appellant’s bad character. This evidence should have been excluded and the failure to do so also constitutes reversible error. Smith v. State, 88 Ala. 73, 7 So. 52 (1889) (court held that trial court correctly excluded statement which referred to a witness as a woman of “no chastity, lewd and dissolute” and stated that the witness lived with a man and kept a house of “ill-fame”); Faircloth v. State, 44 Ala.App. 295, 208 So.2d 66, cert, denied, 281 Ala. 295, 208 So.2d 71 (1968) (trial court properly excluded question propounded to a witness concerning what he was doing out with a woman who was not his wife); Patterson v. State, 224 Ala. 531, 141 So. 195 (1932) (court held that questions concerning whether the witness was divorced and whether she was a prostitute were immaterial); Tillis v. State, 218 Ala. 527, 119 So. 215 (1928) (court held that cross-examination of witness as to whether he had been “keeping” deceased’s wife was improper because a witness can’t be impeached as to his personal misconduct); Lowery v. State, 98 Ala. 45, 13 So. 498 (1893) (court held cross-examination of a witness1 whether she had ever committed adultery was improper).
Due to the two errors found in this case, this cause must be reversed and remanded to the trial court for a new trial.
ORIGINAL OPINION WITHDRAWN; APPLICATION FOR REHEARING GRANTED; REVERSED AND REMANDED.
All the Judges concur.