The appellant, Jeff Jones, was charged with murder, in violation of § 13A-6-2, Code of Alabama 1975, in the stabbing death of Chris Stafford. He was convicted of the lesser included offense of manslaughter and was sentenced to five years' imprisonment in the penitentiary. Two issues are raised on appeal.
The essential facts in this case center around an incident which took place on the evening of January 2, 1987, in a public park in Bay Minette.
On the evening in question, two groups of young males met by pre-arrangement at the park. In the victim Chris Stafford's group were Stafford, his stepbrother Larry Quinley, Jimmy Brown, and Keith Coleman. In the appellant Jeff Jones's group, in addition to Jones, were Jerry Booth, Junior Smith, and Chad Johnson.
Earlier in the evening, there had been an argument in the Delchamps parking lot between Larry Quinley and Jerry Booth over a girl. It was agreed that they would meet at the park and the two would "fight it out." When the two groups arrived at the park, Quinley and Booth began fighting, while the other members of the two groups stood by and watched. After Quinley and Booth fought for a while, they stopped and shook hands. However, at this time, Jimmy Brown, of Stafford's group, discharged a shotgun into the air. A free-for-all ensued. Chad Johnson of Jones's group struck Jimmy Brown in the face. A fight also broke out between Stafford and Jones, with Stafford landing on top and striking Jones repeatedly.
Larry Quinley, the victim's stepbrother, who could see "a lot of blood," went over and tried to pull Stafford off of Jones; however, in the process, Quinley was cut on the finger by the appellant, Jones. Once he got the pair separated, Quinley began "stomping" Jones in the face, and Stafford ran away from them. After he had subdued Jones, Quinley ran after Stafford, who had collapsed a short distance away. Members of Stafford's group got Stafford back in their car, took him to a hospital, left him in the care of emergency room personnel, and departed. Stafford died shortly thereafter.
Jones turned himself and his knife in to the police the next day. He told the authorities that he had seen Stafford go toward a member of his (appellant's) group. He said he saw something that looked like a knife in Stafford's hand. Jones said he then approached Stafford and was struck with a "knife-looking object" which cut Jones's head and caused blood to run down his face. According to Jones, he was in fear for his life when he got out his own *Page 1253 
knife and struck out at Stafford in an attempt to get away.
 I
Appellant Jones first contends that the trial court erred by denying him the opportunity to impeach a State's witness by introduction of independent proof of the witness's bias after the witness denied the facts indicating bias.
The record reflects that on cross-examination by the defense, Larry Quinley denied that he had made a statement indicating bias, to defense witness Gerald "Jerry" Booth:
 "Q Okay. Ever made the statement to Gerald Booth that you were going to take care of Jeff Jones if the jury didn't?
"A Sure didn't.
"Q Didn't say that?
"A No."
During its case in chief, the defense called Jerry Booth to the stand, whereupon the following occurred:
 "Q. I think you've already testified you know Larry Quinley. Apparently y'all knew each other that night, too?
"A. Yes, sir.
"Q. Have you seen him since that incident?
"A. Yes, I have.
"Q. Had any conversations with him?
"A. Yes, sir, I have.
 "Q. When was the most recent one you had with Mr. Quinley?
 "MR. FLOYD: Your Honor, we will object. The question is going toward eliciting hearsay from the witness.
"MR. SIMON: Impeachment, Your Honor.
"THE COURT: Overruled.
"THE WITNESS: It was approximately a month ago.
"BY MR. KEMMER:
"Q. Okay. Where did that conversation take place?
 "A. We were at a friend's trailer, and he came in. And he walked in and —
"THE COURT: That's enough. You answered the question.
"BY MR. KEMMER:
 "Q. Okay. What was the substance of that conversation?
"THE WITNESS: He told me if —
"MR. FLOYD: We object, Your Honor. Non-responsive.
"THE COURT: It's hearsay. Strike it.
"MR. KEMMER: Your Honor, if I may approach the bench.
"THE COURT: You may.
"(Off-the-record discussion.)
"(The following bench conference was held:)
 "MR. KEMMER: We would like to except to Your Honor's ruling in sustaining that objection to that question. When Larry Quinley was on the stand, he testified that he had not had any conversations with Mr. Booth and that he had not made any threats toward Mr. Jones or any statements to the effect that if this Court or the jury didn't take care of Mr. Jones, that he would. And he denied making that statement. We feel this is impeachment of that witness and goes to taint any testimony that he may have as to what went on that night in that the substance of his statement would be that he said he was going to get the Defendant and that he would be out to get him on the witness stand or in person.
 "THE COURT: Well, the fact that he said he had had no conversation — you have not elicited testimony that there was, in fact, that conversation. That's fine. But the substance of that conversation is still rank hearsay. That would be the rankest form. It's just hearsay. This man can say that man told me anything I wanted to say; anything. There's no way that anyone can disprove or prove that. And you asked the man did he say that and did he have a conversation.
 "He has said now — you have impeached that, in fact, there was a conversation. But the substance of that conversation, even if he said what he said, unless he admits it, is hearsay just as it occurred not only outside the Court but outside the presence of this Defendant. So I'll have to — the fact that there was *Page 1254 
conversations obviously is admissible. What occurred during the conversation — unless you can show that the Defendant was present, you know, is just hearsay.
 "MR. SIMON: Your Honor, am I correct to understand that it is futile for us to proceed with this line of questioning?
"THE COURT: Yes.
"MR. SIMON: You understand our grounds for objection?
 "THE COURT: I certainly do. I understand that. There may be, you know — you might now wish to — if you wish to recall Larry and say, `Now, Larry . . .' — if you wish to recall him and impeach him, that's fine. But if he says what he said, that's correct; it's not hearsay. If this man said what he said, I would have to hold — I have excluded all witnesses. He is still subject to recall if you would like to recall him.
 "MR. SIMON: Just to be clear, he denied making that statement when he was on the stand in the courtroom.
"THE COURT: I understand that.
"MR. KEMMER: Okay. We want our exceptions.
"THE COURT: Certainly. It's noted.
"(Bench conference concluded.)
"MR. KEMMER: Mr. Booth, thank you.
"MR. FLOYD: No questions.
"THE COURT: You're excused."
Our examination of the law applicable to the present case leaves us with no option but to conclude that the ruling excluding testimony constituted error. The law is clear that an accused is entitled to show bias and prejudice on the part of a witness. Elmore v. State, 445 So.2d 943, 946 (Ala.Cr.App. 1983). Moreover, great latitude is to be allowed an accused in an effort to show the bias of an important witness as to contested issues in a criminal case. St. John v. State,358 So.2d 812, 816 (Ala.Cr.App. 1978). The trial court, has very little, if any, discretionary right to exclude from evidence an important fact showing the bias of a witness. Proctor v. State,331 So.2d 828, 830 (Ala.Cr.App. 1976); Williams v. State,44 Ala. App. 503, 214 So.2d 712, 713 (1968).
Ordinarily, the way to show bias on the part of a witness is to ask him directly as to the state of his feelings, and, if he denies bias, then to prove facts to show such bias. Page v.State, 487 So.2d 999, 1003 (Ala.Cr.App. 1986); see also C. Gamble, McElroy's Alabama Evidence § 149.01 (1) (3d. ed. 1977). This is precisely what appellant's defense counsel set about to do. However, the trial court refused to allow appellant the opportunity to independently prove facts tending to show bias on the part of the State's witness, stating that the defense witness's testimony would be "rank hearsay." Such is not the case. The general rule is that:
 "Prior inconsistent statements of a witness made out of court are admissible in evidence for the purpose of showing that the witness is not worthy of belief — that is, for impeachment purposes. Such evidence is not classed as hearsay.
29 Am.Jur.2d Evidence, § 500 (1967). (Emphasis supplied.) Seealso McElroy's Alabama Evidence, supra, at § 149.01 (10). This type statement is not offered to prove the truth of the things said, and so does not fit the definition of hearsay. Thus, the trial court erred in not allowing Jerry Booth to testify as to what Larry Quinley had said to him regarding the appellant.
Such error was not harmless, as it was in Page, supra. True enough, it was established that Quinley was Stafford's stepbrother. This type of bias, however, falls short of the bias shown by proof that the witness stated if the jury did not get Jeff Jones, then he would. It is only natural to expect a relative of a crime victim to be angry at the accused. It is not natural for one to express vengeance against the accused if he is not convicted. Such a statement would be highly relevant to the question of the witness's bias. Furthermore, the same witness's testimony damaged appellant's claim of self-defense. He was the individual closest to the fight between the victim and appellant, and was, in fact, the person who broke up the fight. Thus, his testimony that the victim was unarmed was the most damaging of all the State's testimony, since he was in the best *Page 1255 
position to see if the victim was armed. Not allowing the defense to present independent proof of this witness's bias probably injuriously affected the substantial right of the appellant. Such error was not harmless.
 II
Appellant also contends that the trial court erred by its refusal to allow his attorney to show the entirety of conversations which the State had inquired into in part. It is not necessary at this time to consider this remaining issue. We note, however, that
 "when one party brings out part of a transaction or conversation, the other party may inquire further into the manner or bring out the whole subject for further examination. Logan v. State, 291 Ala. 497, 282 So.2d 898 (1973); Hocutt v. State, 344 So.2d 194
(Ala.Crim.App. 1977). This proposition of law, also known as the `rule of completeness,' 7 Wigmore, Evidence §§ 2094-2125 (3d ed. 1940), serves the purpose of allowing a party to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary. See generally 22A C.J.S. Criminal Law § 660 (1961) and the cases cited therein."
Tucker v. State, 474 So.2d 134, 135 (Ala. 1985); St. John v.State, 523 So.2d 521 (Ala.Cr.App. 1987).
For the errors indicated, the judgment of the trial court is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.
 *Page 40