Bennie Leroy Russell was convicted and sentenced to ninety-nine years' imprisonment for first degree rape and to a concurrent term of ten years' imprisonment for sexual abuse in the first degree. Russell raises three issues on this appeal from those convictions.
 I
Russell argues that he was entitled to inspect the entire file of the Department of Human Resources (DHS) concerning the victim.
During the trial, the trial judge stated the relevant facts:
 "THE COURT: The facts are that he [defense counsel] subpoenaed the Department of Human Resources records, and they exerted their privilege under the statute that has an exception in it for parents and attorneys, and Mr. Russell doesn't qualify for either of those, since he is not a step-parent. But the Court did examine the entire DHR record on this family and provided to Mr. Patterson [defense counsel] copies of the excerpts from there that were exculpatory, in the Court's opinion, or conceivably exculpatory materials, and provided them to Mr. Patterson. And the Court has ruled that the rest of the record, a copy of the entire records, will be made and it will be sealed, so it will be available for review by the appellate court on appeal. And in those records, we will make that copy, and we will put in those a copy of the materials that Mr. Patterson was provided.
 "Does that adequately state what the situation is, Joe?
"MR. PATTERSON: Yes, sir. *Page 726 
 "THE COURT: Of course, you continue to insist upon all the records?
 "MR. PATTERSON: Yes, sir. We say we're entitled to all the records, but that's fine, Judge."
When it was later discovered during the course of the trial that the district attorney had records from the Department of Human Resources, the trial judge ordered that a copy be made of those records in the district attorney's possession and included in the record on appeal.
Russell was thirty-six years old at the time he raped and sexually abused the nine-year-old victim. Russell was the "boyfriend" of the child's mother.
Alabama Code 1975, § 26-14-8, provides, in part:
 "(a) The state department of human resources shall establish a statewide central registry for reports of child abuse and neglect made pursuant to this chapter [reporting of child abuse or neglect]. . . .
 "(b) . . . The use of such reports and records shall be limited to the purposes for which they are furnished and by the provisions of law under which they may be furnished. The reports and records of child abuse and neglect shall be confidential, and shall not be used or disclosed for any purposes other than:
" * * *
 "(4) For use by a court where it finds that such information is necessary for the determination of an issue before the court;
" * * *
 "(c) Any violation of this provision of confidentiality shall be a misdemeanor and punishable accordingly."
Although the statute lists eight exceptions to confidentiality, exception number (4) is the only one conceivably applicable to this case.
A similar issue was addressed by the Supreme Court of the United States in Pennsylvania v. Ritchie, 480 U.S. 39,107 S.Ct. 989, 94 L.Ed.2d 40 (1987). We find that case controlling.
Ritchie was charged with rape and other sexual offenses against a thirteen-year-old victim. He was not allowed to review or discover any of the files on the victim compiled by the state Children and Youth Services (CYS), a protective service agency charged with investigating cases of suspected mistreatment and neglect. By state law, those reports were confidential.
Ritchie alleged that his right to examine the full contents of the CYS records was required by the Confrontation Clause of the United States Constitution. In rejecting that claim, the court held:
 "The opinions of this Court show that the right of confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. See California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489
(1970) ('[I]t is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause'); Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ('The right to confrontation is basically a trial right'). The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. Delaware v. Fensterer, supra, 474 U.S. [15], at 22, 106 S.Ct. [292], at 296 [88 L.Ed.2d 15 (1985)]. In short, the Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' Id., at [20], 106 S.Ct., at 295 (emphasis in original). See also Ohio v. Roberts, supra, 448 U.S. [56], at 73, n. 12, 100 S.Ct. [2531], at 2543, n. 12 [65 L.Ed.2d 597 (1980)] (except in 'extraordinary cases, no inquiry into "effectiveness" [of cross-examination] is required')." Ritchie, *Page 727 107 S.Ct. at 999 (emphasis and brackets in original) (footnote omitted).
The Supreme Court declined to determine whether or not Ritchie was entitled to inspect the entire CYS files under the Confrontation Clause concluding "that on these facts, Ritchie's claims more properly are considered by reference to due process." Ritchie, 107 S.Ct. at 1001.
 "It is well-settled that the Government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, supra, 373 U.S. [83], at 87, 83 S.Ct. [1194], at 1196 [10 L.Ed.2d 215 (1963)]. Although courts have used different terminologies to define 'materiality,' a majority of this Court has agreed, '[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' United States v. Bagley, supra, 473 U.S. [667], at 682, 105 S.Ct. [3375], at 3384 [87 L.Ed.2d 481 (1985)] (opinion of BLACKMUN, J.); see id., at 685, 105 S.Ct., at 3385
(opinion of WHITE, J.)." Ritchie, 107 S.Ct. at 1001-02.
Like Alabama's § 26-14-8, the Pennsylvania statute did not grant absolute confidentiality but provided for disclosure in certain circumstances. Therefore, Ritchie was entitled to the disclosure of information material to his defense.
 "In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused.
"* * *
 ". . .Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial." Ritchie, 107 S.Ct. at 1002.
Additionally, the Supreme Court held that Ritchie had no right to full disclosure or inspection of the confidential files and records of the child abuse agency.
 "A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. See United States v. Bagley, 473 U.S., at 675, 105 S.Ct., at [3379]; United States v. Agurs, supra, 427 U.S., at 111, 96 S.Ct., at 2401. Although the eye of an advocate may be helpful to a defendant in ferreting out information, Dennis v. United States, 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966), this Court has never held — even in the absence of a statute restricting disclosure — that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 [10 L.Ed.2d 215 (1963)], it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ('There is no general constitutional right to discovery in a criminal case, and Brady did not create one').
 "We find that Ritchie's interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for in camera review. Although this rule denies Ritchie the benefits of an 'advocate's eye,' we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file (e.g., the medical report), he is free to request it directly from the *Page 728 
court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.
"* * *
 ". . .The Commonwealth's purpose [in protecting its child abuse information and in uncovering and treating child abuse] would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result." Ritchie, 107 S.Ct. at 1003-04 (footnote omitted).
On authority of Ritchie, supra, we hold that Russell was not entitled to examine the complete file of the DHS concerning the victim. Here, the trial judge examined the entire file and provided Russell with the material which was "conceivably exculpatory." This satisfied the requirement that the defendant be allowed access to information material to his defense.Ritchie, 107 S.Ct. at 1002. This same procedure was approved and ordered in Ex parte Riggs, 423 So.2d 202, 203 (Ala. 1982) (in mandamus proceeding, parent in damage suit against teacher sought to have trial judge required to permit her to discover records of Department of Pensions and Security concerning investigation of teacher's alleged assault on parent's child).
This Court has examined the entire DHS file, the portion of that file disclosed to Russell, and the portion available to the district attorney. We have found no material information or information which, had it been disclosed to the defense, would have created a reasonable probability that the result of the trial would have been different. In our opinion, Russell received all the information to which he was entitled and has no cause for complaint.
 II
Russell also argues that "the District Attorney erred in not supplying [defense counsel] with all of the Department of Human Resources records that might have contained exculpatory material." Appellant's brief at p. 70.
Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97. "In order to establish a Brady violation, the defendant must establish the following elements: 1. that the prosecution suppressed the evidence; 2. that the evidence was of a character favorable to the defense; and 3. that the evidence was material." Ex parte Dickerson, 517 So.2d 628, 630 (Ala. 1987).
Here, Russell has failed to establish all three elements.
 III
The prosecution was properly allowed to impeach Russell's trial testimony by introducing evidence of eleven misdemeanor convictions for the offense of issuing a worthless check. "[C]onviction of the offense of issuing a worthless check is a crime involving moral turpitude in Alabama." Ex parte Poole,497 So.2d 537, 543 (Ala. 1986). Although a misdemeanor conviction for a crime involving moral turpitude cannot be used to disfranchise a voter, Hunter v. Underwood, 471 U.S. 222,105 S.Ct. 1916, 85 L.Ed.2d 222 (1985); Poole, supra, such a conviction may be used to impeach a witness. C. Gamble,McElroy's Alabama Evidence § 145.01 et seq. (3d ed. 1977).
At trial, there was no objection to the manner in which the prior convictions were introduced into evidence, and no error concerning that issue has been preserved. Murray v. State,494 So.2d 891, 895 (Ala.Cr.App. 1986); Faircloth v. State,471 So.2d 485, 493 (Ala.Cr.App. 1984), affirmed, Ex parteFaircloth, 471 So.2d 493 (Ala. 1985). *Page 729 
Our review convinces this Court that Russell received a fair trial. His convictions are supported by the evidence. The judgment in each of Russell's convictions in the circuit court is affirmed.
AFFIRMED.
All Judges concur.