Steve Ross was indicted for the offense of selling, furnishing or giving away marijuana in violation of § 20-2-70, Code of Alabama 1975 (now repealed). With the approval of the appellant, the charge was changed to felony possession of marijuana in violation of the same statutory section. The jury found the appellant "guilty as charged," and the trial judge sentenced the appellant to fifteen years' imprisonment in the state penitentiary.
Teresa Smith Ming had agreed to cooperate with the Selma Police Department and the Federal Bureau of Investigation. Teresa Ming's role in this matter was to purchase drugs from suspected drug dealers in Selma, Alabama, and to notify the Selma Police Department of those persons with whom she dealt.
On or about September 7, 1987, Ming met this appellant at Roger's Lounge in Selma, Alabama. Ming asked the appellant if he could get her some drugs. She testified that he said that he could and that she was to come to his house the next day. *Page 1180 
With the assistance and cooperation of the Selma Police Department, Ming purchased drugs from the appellant on four occasions. On two of these occasions, September 8 and 16, 1987, she was wearing a transmitting device. Officers from the Selma Police Department operated the recording equipment.
The appellant claimed that he was entrapped and that he sold "yard grass" to Ming just to get rid of her. The appellant, nonetheless, was found guilty by the trial jury. It is this conviction which he now appeals.
 I
The appellant first contends that he was denied the opportunity for thorough cross-examination when the trial judge refused to allow him to inspect the personnel records of the Selma Police Department with regard to Lieutenant Ken Smith.
By pre-trial motion to inspect, the appellant sought to obtain and review the personnel records of Lt. Smith. The testimony at trial revealed that, on June 25, 1981, the appellant, Lt. Smith, and Deputy Billy Duke of the Dallas County Sheriff's Department, got into a fight at a local bar. The appellant contends that Lt. Smith and Deputy Duke told him that they would "get him."
Counsel for the City of Selma, Alabama, intervened and sought a protective order with regard to the personnel records of Lt. Smith. The City's counsel stated that Lt. Smith was, in fact, suspended a short time after the altercation with the appellant, but that he was suspended for the unauthorized use of a city vehicle.
The trial judge reviewed the disputed records in camera. He decided that the appellant would be allowed to cross-examine Lt. Smith about the altercation with the appellant, and, if his testimony varied from that which was in the records, then the appellant would be allowed to view the records and use them to show bias and for impeachment purposes.
The appellant did cross-examine Lt. Smith about the fight. Lt. Smith testified that he did fight with the appellant in 1981. He further stated that he was suspended from the force immediately thereafter for the unauthorized use of a city vehicle for personal use. The appellant again requested an opportunity to review Lt. Smith's personnel records, which the trial judge denied.
In Hembree v. City of Birmingham, 381 So.2d 664, 666
(Ala.Crim.App. 1980), this court emphasized the importance of the right to confrontation and our standard of review when that right is challenged:
 "The right of a defendant to confront and cross-examine witnesses is guaranteed by Article I, § 6, Const. of Ala. 1901, by § 12-21-137, Code of Ala. 1975, and by the Sixth Amendment to the United States Constitution. Any limitation on that fundamental constitutional right will be closely scrutinized by the appellate courts. Ball v. State, Ala.Cr.App., 337 So.2d 31 (1976), cert. quashed, Ala., 337 So.2d 39. However, it has repeatedly been held that the latitude and extent of cross-examination is a matter within the sound discretion of the trial court and is reviewable on appeal only for prejudicial abuse. Turner v. State, 289 Ala. 97, 265 So.2d 883 (1972), and cases cited therein. On appeal the party claiming an abuse of such discretion bears the burden of persuasion. Connell v. State, 294 Ala. 477, 318 So.2d 710
(1974)."
In two recent opinions of this court, we held that the trial judge's refusal to allow the appellant to delve into a witness' possible bias and prejudice constituted reversible error.Jones v. State, 531 So.2d 1251 (Ala.Crim.App. 1988); Burns v.State, 518 So.2d 860 (Ala.Crim.App. 1987).
Both Burns and Jones, however, are distinguishable from the cause sub judice. In Burns and Jones, the appellants were not allowed to cross-examine witnesses regarding the respective issues on which they appealed. Here, the trial judge allowed the appellant great leeway in cross-examining Lt. Smith of the Selma Police Department. Lt. Smith's testimony was consistent with the information included in the personnel records, as disclosed by counsel for the *Page 1181 
City of Selma. See Williams v. State, 44 Ala. App. 503,214 So.2d 712, 714 (1968) (defendant may always cross-examine a witness about biases or prejudices).
We addressed a similar issue in Russell v. State,533 So.2d 725 (Ala.Crim.App. 1988), where the appellant asked to see the records of the Department of Human Resources regarding the victim. This court, in Russell, quoted from Pennsylvania v.Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), as follows:
 " 'The opinions of this Court show that the right of confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. See California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489
(1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right"). The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. Delaware v. Fensterer, supra, 474 U.S. [15], at 22, 106 S.Ct. [292], at 296 [88 L.Ed.2d 15 (1985)]. In short, the Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id., at [20], 106 S.Ct., at 295 (emphasis in original). See also Ohio v. Roberts, supra, 448 U.S. [56], at 73, n. 12, 100 S.Ct. [2531], at 2543, n. 12 [65 L.Ed.2d 597 (1980)] (except in "extraordinary cases, no inquiry into 'effectiveness' [of cross-examination] is required').' Ritchie, 107 S.Ct. at 999 (emphasis and brackets in original) (footnote omitted)."
Russell, 533 So.2d at 726. See also Mardis v. State,423 So.2d 331, 334 (Ala.Crim.App. 1982) ("[f]urthermore, it is within the trial court's discretion to deny disclosure of material which might impeach the credibility of the State's witnesses").
We find that the trial judge's refusal to allow the appellant access to Lt. Smith's personnel records neither prejudiced nor denied the appellant effective cross-examination of that witness. Therefore, the trial judge did not abuse his discretion.
 II
The appellant next contends that a statement made by Deputy Billy Duke of the Dallas County Sheriff's Department on cross-examination prejudiced him and constituted reversible error.
 "Q. All right. Now you have been going by Steve's house often, have you not?
"A. Good possibility I have.
 "Q. And stopping him in his car often, have you not?
"A. Several times.
 "Q. All right. And each time you were always trying to find some type of criminal activity.
"A. Yes. He's a known dealer.
 "MR. PETTAWAY: Now, Your Honor, I have to object to that. That's unresponsive, totally, and it's totally unrelated to my question.
"THE COURT: Sustained.
 "MR. PETTAWAY: I ask the jury to be instructed —
 "THE COURT: Ladies and gentlemen of the jury, you should disregard that last comment.
 "MR. GREENE: I realize you've already ruled, Your Honor, but that's exactly what Defense counsel was asking for and where he was heading.
"THE COURT: I understand.
 "MR. PETTAWAY: That's not what I asked for or where I'm heading to.
"MR. GREENE: You brought it up.
"THE COURT: You're opening the door, counselor." *Page 1182 
The appellant's objection to the statement was sustained, and his motion for a curative instruction was granted. Therefore, there is no adverse ruling which this court can review.Wright v. State, 57 Ala. App. 401, 328 So.2d 650 (1976). Seealso Schut v. State, 548 So.2d 638 (Ala.Crim.App. 1989) (alleged error cured by prompt curative instruction).
 III
Lastly, the appellant contends that the trial court erred by allowing the State to introduce and play tapes before the jury, allegedly representing Ming's purchasing marijuana from the appellant.
The record reveals that the two tapes were recorded on September 8 and September 16, 1987, respectively. Both Lt. Ken Smith and Sgt. Robert Jacobs testified that they either operated the recording equipment or placed the microphone on Teresa Ming. Sgt. Jacobs further testified that he wrote the date on both tapes.
Ming testified that she did have two conversations with this appellant which were taped. She stated that she listened to the two tapes before trial and that each adequately represented her conversations with this appellant.
The tapes were initially played outside the hearing of the jury. The testimony of Lt. Smith and Sgt. Jacobs was elicited to lay a proper foundation for admissibility of the tapes into evidence. Both police officers stated that the tapes had not been altered in any way and were in the possession of Lt. Smith from the time they were recorded until trial.
Both officers identified the two voices on the first tape as Ming's and the appellant's. Both officers then testified that two of the four voices on the second tape were Ming's and the appellant's. They could not identify the persons to whom the other two voices belonged.
This testimony was then repeated in the presence of the jury. Over the appellant's objection, the tapes were played for the jury to hear.
This court recently readdressed the rule for admissibility of audio and video tapes. Molina v. State, 533 So.2d 701, 712
(Ala.Crim.App. 1988). In Molina, we stated that tapes "are admissible when a witness testifies they are reliable representations of the subject sound." Molina, 533 So.2d at 712, quoting C. Scott, Photographic Evidence § 1297, at 97, n. 42.5 (2d ed. 1969) (1987 Pocket Part). In the case at bar, all three witnesses discussed above testified that the audio tapes accurately represented the conversations between Ming and this appellant.
Further, admission of a tape recording into evidence is within the discretion of the trial court. Bridges v. State,516 So.2d 895, 899 (Ala.Crim.App. 1987); Bufford v. State,382 So.2d 1162 (Ala.Crim.App.), cert. denied, 382 So.2d 1175
(Ala. 1980), on remand, 399 So.2d 894 (Ala.Crim.App. 1981).
While it is true that portions of the tapes in the present cause were inaudible, both Lt. Smith and Sgt. Jacobs were able to identify the appellant's voice and Ming's voice on the tape. Additionally, the record reveals that, on both occasions on which the two tapes were played, the court reporter was able to hear and transcribe substantial portions of the tapes.
We, therefore, find that the tapes served as corroborative evidence of the State's witnesses. The admission of the tapes in evidence was not an abuse of discretion on the part of the trial court.
For the reasons shown, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1183