Paul Swicegood was charged in a two-count indictment with burglary in the third degree, in violation of § 13A-7-7, Code of Alabama 1975, and was also charged in a separate count with receiving stolen property, first degree, in violation of §13A-8-17, Code of Alabama 1975. The jury found the appellant "guilty as charged in Count I of the indictment" for burglary, third degree. The trial judge sentenced the appellant to fifteen years' imprisonment in *Page 1207 
the state penitentiary, pursuant to the Habitual Felony Offender Act. The trial judge also order the appellant to pay a $100 fine.
On June 11, 1988, around 9:30 or 10:00 p.m., Charles and Nina Judkins returned to their home located in Valley Grove, Cullman County, Alabama. The Judkinses lived in a double wide trailer, situated fifty yards off the highway. Their closest neighbor lived a mile from them.
When they got out of their truck, they heard a vehicle with a loud muffler running. The vehicle was parked on the "logging road," which is seventy-five yards away from the Judkins residence.
As they entered the door of their home, they heard some one inside their home. Mr. Judkins got a gun from his truck and returned to the house. The person inside the house came to the door; Mr. Judkins told him to "drop it," and fired a shot at the person. This person ran into the house and one minute later, they heard a crash and the person jumped out of the back window.
The Judkinses got in their truck to leave, at which time they heard the vehicle on the logging road start up. The victims then chased a white van which was parked on the logging road.
The Judkinses chased the van for about a mile. The van wrecked as it approached a sharp curve. After the accident, the Judkinses called the police from a nearby residence. The woman driving the van argued with Nina Judkins, stating that she had not done anything wrong. Shortly thereafter, the woman walked off into the woods.
Officer Joe Chappell, Investigator for the Cullman County Sheriff's Department, went to the scene of the accident. Chappell then accompanied the victims to their home, where he investigated a burglary at their residence. He discovered a broken bedroom window and a camouflage cap lying on the ground just beneath the broken window. This cap along with a human hair found inside the hat were tested in the forensic science lab. The test results revealed that the hair sample was inconsistent with a hair sample taken from the appellant.
The victims determined that a video camcorder, bass guitar, and a briefcase were missing from their home. All three items were subsequently recovered from the white van which the victims chased. Other evidence found in the van included a tag receipt from the van in the name of Tina Swicegood, a tag receipt for a Datsun Station Wagon in the appellant's name, an identification card for Johnnie Faye Self, and two ladies' purses.
Mr. Judkins described the assailant as being five feet ten inches, 180 pounds, and having fairly short brown hair and a medium length brown beard. The Judkinses never positively identified the appellant as being the person who was inside their home on June 11, 1988.
On June 11, 1988, Tammy Buchanon worked at Ann's Super Saver Store in Cullman County, Alabama. She recalled that around 8:30 p.m. or 9:00 p.m. that the appellant and a woman came into the store. The appellant was wearing a cap. Buchanan recalls seeing a white van parked outside the store at a time when only the appellant and the woman were in the store.
The appellant stated to the clerk that he was looking for Harris, who was a friend whom he had not seen for twenty years. Jewell Brock, who worked at the Super Saver, overheard the appellant say that Harris was retired from the Navy and "he should have plenty." Brock testified that fifteen minutes after the appellant left the store, she heard about a burglary over a police scanner.
On the day after the burglary, between 9:00 a.m. and 10:00 a.m., the appellant and another man appeared at the home of Vickie Hancock. Hancock's house was located about one mile from the Judkins residence. When she opened the door, the person with the appellant said: "this man is hurt, he needs help." Hancock testified that the appellant had on a cap and had scratches on his arms. His left ankle was swollen and he needed assistance walking. Hancock's husband went outside to talk with the men. The appellant, at one point, stated *Page 1208 
that his automobile had been taken from him at gun point and that his foot was run over by a vehicle. After this the police were called.
When Chappell arrived at the Hancock residence, he observed the appellant sitting on the steps of the house. He observed that appellant's left ankle was swollen, he had scratches on his arms and face, his clothes were dirty and he was in an unkept condition.
The appellant was taken by ambulance to the Cullman Medical Center. Chappell later went to the medical center and advised the appellant of his Miranda rights. After his release from the medical center, he was transported to the Sheriff's Department where he was placed under arrest for burglary of the Judkins residence. The appellant then requested that some of his personal items be removed from the white van, which the Sheriff's Department had taken into custody.
James Allison, an investigator for the Cullman County Sheriff's Department, was qualified, at trial, as an expert in tracking the paths of persons in the woods. One June 12, 1988, Allison went to the Hancock's residence and Mrs. Hancock showed him the place where the appellant alleged that his foot was run over by a vehicle.
Allison examined the area and found a place near the roadway where the grass had been pressed down which looked like someone had lain there. Allison found a trail leading down an embankment, which was approximately forty feet into the woods and then the trail turned toward the Judkins home. The trail ended twenty-five feet from the edge of the Judkins yard.
Allison testified that he believed that the trail was made by a man who was crawling. It appeared by the direction in which the vines were pulled that someone had crawled up and down the bank a couple of times.
Dr. James Sornsin treated the appellant for a fracture of the left foot on June 16, 1988. Sornsin testified that there was a possibility that the appellant's injury could have been caused by being run over by a vehicle, but it is highly unlikely with the type of injury sustained to the bone. Sornsin further testified that fractures of the nature the appellant suffered usually are a result of a fall from a height or from jumping off of something.
 I
The appellant challenges the sufficiency of the State's evidence to sustain a conviction for burglary, third degree.
This court must view the evidence in the light most favorable to the prosecution, whether the "jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979); Gray v. State,522 So.2d 786 (Ala.Cr.App. 1987), writ quashed, 522 So.2d 788
(Ala. 1988).
In the present case, the State has presented sufficient evidence to sustain a conviction for burglary. The evidence established (1) that the appellant was seen at Anne's Super Store, which is located near the Judkins home, just prior to the burglary, (2) a person substantially matching the appellant's description was seen inside the Judkins residence, (3) the items stolen from the Judkins home were found in a white van registered to his wife, and (4) the appellant had some personal items in the van at the time he was arrested.
Further evidence which supports the appellant's conviction is that the type of injury which the appellant sustained to his ankle is consistent with an injury which may result from the appellant's jumping from the victim's bedroom window. Also, the trail which led from the Judkins home to the Hancock residence is consistent with one crawling through the woods.
That the appellant appeared at the Hancock home with dirty clothes, in a generally unkept condition, and was unable to walk and had scratches on his arm are other circumstances from which the jury could have reasonably concluded that the evidence *Page 1209 
excluded every reasonable hypothesis except for the appellant's guilt.
From the evidence presented, we find there was sufficient evidence to sustain the appellant's conviction.
 II
The appellant contends that he was not properly sentenced under the Habitual Felony Offender Act because his prior convictions were not properly proved during the sentencing hearing. At the sentencing hearing, the State provided three separate copies of trial docket sheets to show the appellant's conviction of three prior felonies.
The appellant claims that the case numbers were different on page one and page three of exhibit one. However, it appears that the document was photocopied backwards, and thus the case number is the same, but it appears in reverse order. The appellant's challenge to exhibit two and three, concerning certification are without merit. Both convictions were properly certified by the clerk of the Jefferson County Court.
Further, all three exhibits clearly show the appellant's name, the charge for which he was convicted, that he was represented by counsel, and the document was certified by the clerk of the Jefferson County Circuit Court. This court has previously held that, where these factors were shown, the conviction was properly proved to use for enhancement purposes, pursuant to the Habitual Felony Offender Act. McGowan v. State,432 So.2d 557 (Ala.Cr.App. 1983).
For the reasons stated, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.