Bill Henry Carraway was indicted for the capital offense of the murder of Karen Rolin committed during sodomy in the first degree or an attempt thereof. § 13A-5-40(a)(3), Code of Alabama 1975. The jury found Carraway guilty of the lesser included offense of murder, and he was sentenced to life imprisonment in the penitentiary.
The sole issue on appeal is whether the trial court committed reversible error by admitting into evidence three audio tape recordings over Carraway's objection that the State had failed to establish a proper predicate for their admission. In support of his claim, Carraway asserts that 1) there was no testimony as to the accuracy of the machine which made the recording; 2) there was no testimony identifying the voices on the tapes; 3) there was no testimony establishing a chain of custody as to the tapes; and 4) there was no testimony from the person(s) in the Mobile recording studio who made the enhanced tape establishing its accuracy. We agree.
The record reveals that on the morning of June 17, 1988, Carraway came to the Baldwin County district attorney's office at the request of Ron Everts, chief investigator of the Baldwin County Sheriff's Department. Neil Rucker, the chief investigator in the district attorney's office, administered a polygraph examination to Carraway that morning. Carraway was also questioned by Everts, Richard Bryars, and Linda Duffle, investigators with the Sheriff's Department, that morning, but that interrogation was not tape recorded. At approximately 1:40 p.m. that afternoon, Carraway was questioned by Everts, Bryars, and Duffle. Rucker was also present, and Everts tape recorded this interrogation, which lasted approximately 45 minutes. Following this taped interrogation, Rucker administered a second polygraph examination *Page 995 
to Carraway. At approximately 3:09 that afternoon, Carraway was again questioned by Everts and Duffle. Rucker was also present and Bryars was present during parts of this interrogation. Everts tape recorded this interrogation, which lasted approximately eight minutes. It was during this second taped interrogation that Carraway allegedly confessed to the murder of Karen Rolin and implicated Clayton Flowers in her murder.
The Sheriff's Department subsequently discovered that the batteries in the machine which had made the two recordings became weak during the second taped interrogation, causing the machine to record the second tape at a slower speed. To correct this problem, Bryars transported the second tape to a Mobile recording studio where an enhanced copy of the original second tape was made with the tape speed corrected.
The trial court denied Carraway's motion to suppress the two original tapes and the enhanced tape and admitted the three tapes into evidence over Carraway's objection that the proper predicate had not been established.
At the outset, we dismiss the State's claim that this issue was not preserved for appeal because Carraway's objection to the tape's admission was not specific enough to apprise the trial court of the particular legal issue involved.
It is abundantly clear from the record that defense counsel made the following objections to the tapes' admissibilityimmediately after the district attorney first offered the tapes into evidence: 1) the tapes were inadmissible based upon all grounds that defense counsel had previously submitted to the court at the suppression hearing; 2) the tapes were inadmissible because the statements were not freely and voluntarily given and were the product of an illegal detention; and 3) the tapes were inadmissible because there was not a proper predicate laid for submission of the tapes at this time. The district attorney clearly knew what defense counsel meant by the term "proper predicate," because he immediately responded that he could authenticate the tapes in front of the jury. Defense counsel then bent over backwards to make sure that all of his objections to the tapes' admissibility would be preserved during the district attorney's attempts to lay the proper foundation for the tapes' admission. In particular, the trial court assured defense counsel that he need not stand up again during the district attorney's attempts to authenticate the tapes as a condition precedent to preserving Carraway's objections.
Following the district attorney's attempts to authenticate the tapes through the testimony of Everts, the district attorney again requested that the tapes be admitted into evidence. The court admitted the three tapes into evidence and stated that for the record defense counsel had all of his objections noted as previously stated. The first tape recording was then played for the jury. The jury was then taken out of the courtroom, and defense counsel added a fourth objection to the tapes' admissibility — that the tapes were inadmissible because the corpus delicti had not been established. This objection was overruled, and, following further testimony from Everts, the enhanced tape recording was played for the jury.
At the close of the State's case, the district attorney again moved the admission of the three tapes into evidence, and defense counsel reiterated the following specific objection, which was overruled by the court in its admission of the tapes into evidence:
 "Now, further we submit, as to State's Exhibits Thirty-four, Thirty-five, Thirty-six, Your Honor, those exhibits, we further submit that the proper chain of custody has not been before, during or after their time of admission proven in this court, proper predicate was not laid for the tapes and they should be excluded from the evidence and the jury should not be allowed to hear them."
We therefore hold that defense counsel's repeated objections to the tapes' admissibility were certainly specific enough to apprise the district attorney and the trial court of the evidentiary rule requiring the *Page 996 
establishment of a proper foundation for the admission of the tapes.
In Voudrie v. State,[1] 387 So.2d 248, 256 (Ala.Cr.App.), cert. denied, 387 So.2d 256 (Ala. 1980), this court held:
 "[S]ound recordings are admissible providing a proper foundation is laid for their admission. The rules for testing the admissibility of recordings have been outlined as follows:
 " '(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.' 58 A.L.R.2d at 1027-8."
"The purpose of laying a proper foundation for the admission of a tape recording is to show that the conversation or statement was accurately recorded and preserved." Logue v.State, 529 So.2d 1064, 1068 (Ala.Cr.App. 1988).
At no time during the district attorney's repeated attempts to lay the proper foundation for the tapes' admission was testimony elicited identifying the voices recorded. The record reveals that during the two taped interrogations as many as four men, including Carraway, and one woman were present and speaking. Because Carraway did not testify in his own behalf at trial, it was imperative that a witness identify each male voice on the tapes for the jury, because the jury could have mistaken the leading, suggestive remarks of the male interrogators for assertions of Carraway. This omission is in and of itself fatal to the tapes' admissibility. SeeBeavers v. State, 497 So.2d 612, 615 (Ala.Cr.App. 1986) (police officer identified her own voice on tape recording and five witnesses identified the defendant's voice to establish a proper predicate for the tapes' admission).
The omission, moreover, of any expert testimony from the person who made the enhanced tape establishing that the enhanced version of the second tape in no way altered the content of the second tape likewise rendered the enhanced tape inadmissible. Compare Bridges v. State, 516 So.2d 895, 899
(Ala.Cr.App. 1987) (expert who enhanced tape recording testified at trial to lay proper predicate for enhanced tapes' admission). This second omission also broke the chain of custody of the second tape recording, which was in the possession of the person at the recording studio who made the enhancement tape before being returned to the Sheriff's Department. We note also that Everts's attempt to authenticate the enhanced tape's accuracy by comparing it to a transcript of the second tape was misplaced — this transcript was itself never introduced into evidence or authenticated.
Finally, there was no testimony as to the accuracy of the machine which made the recording. See Voudrie, supra. In fact, the only testimony about the recording device revealed that the batteries were weakened, thus making the second tape, which contained the alleged confession, record at a slower speed.
For these reasons, we have no choice but to hold that the trial court committed reversible error in admitting the three tapes into evidence over defense counsel's objection that the State had failed to establish the proper predicate for their admission.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a Retired Supreme Court Justice, and his opinion is hereby adopted as that of this court.
The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED. *Page 997 
All the Judges concur, except BOWEN, J., who concurs in the result with opinion, in which TAYLOR, J., joins.
[1] We note that in Molina v. State, 533 So.2d 701
(Ala.Cr.App. 1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547,103 L.Ed.2d 851 (1989), we held that the seven-pronged standard enunciated in Voudrie does not apply to authentication of videotape recordings.