The appellant, William Jackson, was convicted on three counts of distributing a controlled substance, cocaine, in violation of § 13A-12-211, Code of Alabama 1975. Count two was additionally penalized under § 13A-12-250, because this sale occurred within a one-mile radius of a school campus. Pursuant to the Habitual Felony Offender Act, the appellant was sentenced to life imprisonment for each offense with the sentence for counts one and three to run concurrently and count two to run consecutively with counts one and three.
The evidence tended to show that on three separate occasions, the appellant furnished cocaine to Jeff Adkinson, an undercover agent for the drug unit of the Alabama Alcoholic Beverage Control Board. The first transaction (count one) took place on February 28, 1989. Agent Adkinson testified that he drove to a residence suggested to him by a confidential informant. Upon Agent Adkinson's arrival at the residence, the appellant approached the agent's vehicle and entered it from the passenger side. The appellant and Agent Adkinson discussed the purchase of an "eight ball" (3.5 grams) of cocaine and agreed on a price of $240.00. The appellant took the money offered by Agent Adkinson and then left the vehicle. He told Agent Adkinson to circle the block and that they would conclude the transaction upon his return. When Agent Adkinson returned after driving around the block, the appellant again entered the vehicle and handed Agent Adkinson a small plastic bag containing three *Page 600 
grams of cocaine. This transaction was monitored and tape-recorded by Agent J.D. Davis of the drug unit of the Alabama Alcoholic Beverage Control Board, via a body microphone worn by Agent Adkinson.
The second transaction (count two) between Agent Adkinson and the appellant took place on March 28, 1989, at approximately 5:30 p.m. At this time, Agent Adkinson and a confidential informant went to a different residence to meet the appellant. Agent Adkinson again informed the appellant that he wanted to purchase an eight ball of cocaine. The appellant told Agent Adkinson to wait at the residence while he went for the cocaine. The appellant returned with an individual known as "Pinto" and informed Agent Adkinson that Pinto had the cocaine. Pinto produced 1.5 grams of cocaine for which Agent Adkinson paid $143.00.
The third transaction (count three) also took place on March 28, 1989. Pinto telephoned Agent Adkinson's confidential informant and informed him that he and the appellant had the rest of the eight ball of cocaine requested by Agent Adkinson. At approximately 10:40 p.m., Agent Adkinson met the appellant and Pinto at a gasoline service station. The appellant exited his vehicle and approached Agent Adkinson. The appellant told Agent Adkinson that they should move to another location. He then returned to his vehicle; thereafter, he and Pinto followed Agent Adkinson to another service station located one-half mile away. Once at this location, the appellant parked his vehicle beside Adkinson's vehicle. After a brief discussion, Pinto threw a small plastic bag containing cocaine into Agent Adkinson's vehicle. Agent Adkinson reciprocated by throwing a bundle of bills totaling $225.00 to Pinto through the window of the appellant's vehicle.
The appellant appears to raise five issues on appeal.
 I
The appellant contends that the trial court erred in denying his motion for judgment of acquittal with regard to count one. He argues that the trial court incorrectly received the tape recording of this first transaction into evidence. Furthermore, he asserts that without the admission of this tape recording, the state's evidence was insufficient to support his conviction.
This court, in Molina v. State, 533 So.2d 701 (Ala.Cr.App. 1988), abolished the rigid prerequisites necessary for establishing a chain of custody for receiving a tape recording into evidence. Now, all that is required is to show that the recordings are "reliable representations of the subject sound."Ross v. State, 555 So.2d 1179, 1182 (Ala.Cr.App. 1989); See also Molina. It is clear from the record that the prosecutor elicited testimony sufficient to establish the authenticity required for the admissibility of the tape recording as required by Molina. Thereafter, the admission of the tape recording into evidence was within the sound discretion of the trial judge.
The appellant further contends that the trial court erred in allowing this tape recording into evidence because the recording begins in the middle of the conversation between Agent Adkinson and the appellant. Agent Adkinson verified this fact but stated that the tape conversation did accurately depict the "actual transaction." The transcript of the trial contains no claim or suggestion by the appellant that the tape recording, as introduced, was altered in any material way or gave a misleading account of the recorded conversation. SeeUnited States v. Starks, 515 F.2d 112 (3d Cir. 1975). In addition, there was other testimony presented which provided the same information as was contained on the tape. Therefore, the appellant was not prejudiced by the receipt of the tape recording into evidence. The fact that the tape recording did not include the entire conversation between the appellant and Agent Adkinson does not render it inadmissible; that fact affects only the weight that the recording should be given by the jury. See Bridges v. State, 516 So.2d 895 (Ala.Cr.App. 1987).
Also with regard to the tape recording, the appellant argues that the copy of the tape recording provided by the state pursuant to a discovery order did not contain as *Page 601 
much of the conversation as did the tape presented at trial. Therefore, the appellant claims on appeal that the State's action violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963).
Only those matters which are timely raised and adversely ruled upon at trial are preserved for appellate review.Maul v. State, 531 So.2d 35 (Ala.Cr.App. 1987). We note that the appellant made no specific Brady objection at trial so as to preserve this issue for review. Moreover, had a specific objection been made at trial, we hold that the issue raised by the appellant would not be controlled by Brady. Brady holds in part as follows:
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material
either to the guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97 (emphasis added).
The appellant made no effort to show that the information missing from the tape recording supplied to him during discovery was exculpatory. In fact, it appears from the record that the tape recording which the jury heard was indeed the tape recording provided to the appellant. Also, the only deletions to this tape were those requested by, and granted to, the appellant. Therefore, it is clear from the record that the trial court correctly received the tape recording into evidence.
 II
The appellant next argues that the trial court erred in denying his motion for judgment of acquittal with regard to count two. In his brief, the appellant assigns no error to his conviction for the actual sale of cocaine under § 13A-12-211. He contends, however, that the state failed to prove that the offense occurred within a one-mile[1] radius of a school campus. We disagree. We note that § 13A-12-250 is a penalty provision and pertains solely to sentence enhancement. See Dixon v.State, 572 So.2d 512 (Ala.Cr.App. 1990).
Agent Davis testified that he measured the distance from the location of the exchange to Grace Baptist School and that, "[t]he distance by road is approximately one point one mile. . . . . As the crow flies it would be much shorter than a mile." The appellant argues that the statute specifically requires a showing that the sale was made within one mile of a school campus. Therefore, he contends that the 1.1 mile distance testified to by Agent Davis was insufficient to support the augmentation of his sentence under § 13A-12-250.
In analyzing § 13A-12-250, we are reminded that, "[t]he fundamental rule of statutory construction is that a court is under a duty to ascertain and effectuate legislative intent as expressed in the statute which may be gleaned from the language used, the reason and necessity for the act and the purpose sought to be obtained" (citations omitted). Shelton v. Wright,439 So.2d 55, 57 (Ala. 1983). By enacting this statute, our legislature intended to create a drug-free atmosphere on our school grounds as well as a permanent, drug-free buffer-zone around these areas. See Qualls v. State, 555 So.2d 1158
(Ala.Cr.App. 1989).
However, in the case at hand, the language of the statute is clear on its face and requires no special statutory construction. The essential language of § 13A-12-250 refers to "a one mile radius of the campus boundaries . . . ." (Emphasis added.) The term "radius" is defined as "a straight line
extending from the center of a circle or sphere to the circumference or surface." Random House Dictionary of theEnglish Language 1594 (2d ed. 1987) (emphasis added). Often in our vernacular, we refer to the shortest distance between two points (i.e., a straight line) by the phrase, "as the crow flies." Accordingly, there was sufficient evidence for the trial *Page 602 
court to determine that the sale occurred within a one mile radius of a school campus, thereby invoking the enhancement provision of § 13A-12-250, Code of Alabama, 1975.
 III
With regard to count three, the appellant contends that the trial court erred in denying his motion for judgment of acquittal because, he argues, he was present in the vehicle when the transaction took place but did not physically participate in the deal.
The appellant was indicted under § 13A-12-211, which reads as follows:
 "(a) A person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance . . ." (emphasis added).
This court has previously held that the term "furnish" means to supply by any means — sale or otherwise. McKissick v. State,522 So.2d 3 (Ala.Cr.App. 1987). Furthermore, the basis of criminal liability is the participation of a defendant in, or his or her criminal participation in, a sale, and not the defendant's act of actually physically transferring the controlled substance to the buyer. Martin v. Alabama,730 F.2d 721 (11th Cir. 1984).
In the case at hand, ample evidence was presented which established the appellant's participation in the sale. Therefore, the trial court correctly denied his motion for judgment of acquittal with regard to count three.
 IV
The appellant next contends that the trial court erred in its use of certain prior convictions for purposes of applying the Habitual Felony Offender Act during sentencing. The appellant alleged that at sentencing, and again on appeal, the certified copies of two prior robbery convictions offered by the state did not reflect whether he had been represented by counsel on "plea day."
As pointed out by the trial court, those certified copies of appellant's prior convictions — as reproduced in the record — clearly show that he was indeed represented by counsel from arraignment to sentencing. Each of those certified copies shows the appellant's name, the charge of which he was convicted, and that he was represented by counsel. Where these factors have been shown, the convictions were sufficiently proved for enhancement purposes pursuant to the Habitual Felony Offender Act. See Swicegood v. State, 565 So.2d 1206 (App.Cr.App. 1990);McGowan v. State, 432 So.2d 557 (Ala.Cr.App. 1983). Therefore, contrary to the appellant's contention, the trial court correctly utilized these convictions during sentencing.
 V
The appellant argues finally that the trial court erred in sentencing him under the Habitual Felony Offender Act because, he argues, the Habitual Felony Offender Act is not applicable to drug offenses.
The State contends that this issue was not preserved for our review because the appellant failed to object to his being sentenced under the Habitual Felony Offender Act. We disagree with the State's contention. As we have stated previously, we consider errors in sentencing of this type to be jurisdictional and not subject to waiver. Blair v. State, 549 So.2d 112
(Ala.Cr.App.), cert. denied, 549 So.2d 114 (Ala. 1988). Therefore, we must address the issue of whether the appellant's sentence in a drug-related offense can be enhanced pursuant to the Habitual Felony Offender Act.
In Ex parte Chambers, 522 So.2d 313 (Ala. 1987), our Supreme Court held that the Habitual Felony Offender Act is not applicable to defendants convicted of felony drug offenses under the Controlled Substances Act (Code 1975, §§ 20-2-1 et seq.). The decisive reasoning in Chambers was based on the fact that drug-related offenses were handled under the Controlled Substances Act which was separate from the remainder of the Alabama Criminal *Page 603 
Code. Therefore, the Court concluded that defendants convicted of offenses under the Controlled Substances Act must be sentenced according to the recidivist provisions of that act.Ex parte Chambers, at 316.
Our Supreme Court again addressed this issue in Ex parteBrannon, 547 So.2d 68 (Ala. 1989). In that case, the Court based its decision on whether the Controlled Substances Act or the Alabama Criminal Code controlled at the time the conduct leading to the defendant's conviction occurred. It stated:
 "We note that the Controlled Substances Act has been amended by Acts of Alabama 1987, No. 87-603, the 'Drug Crimes Amendments Act of 1987.' This act repealed § 20-2-70, the recidivist provision within the Controlled Substances Act, for conduct occurring after the effective date of the act, and it made drug related crimes subject to the Habitual Felony Offender Act."
Ex parte Brannon, 547 So.2d at 69.
The Drug Crimes Amendments Act of 1987 is presently found in § 13A-12-210 through § 13A-12-216, Code of Alabama 1975. It became effective October 21, 1987. In Springfield v. State,580 So.2d 88 (Ala.Cr.App. 1991), we applied the reasoning of Exparte Brannon, and held that the Habitual Felony Offender Act does apply to drug-related offenses occurring after the effective date of the Drug Crimes Amendments Act.
In the present case, we note that the conduct which gave rise to the appellant's conviction occurred on February 28, 1989, and on March 28, 1989. Both of these dates were well after the Drug Crimes Amendments Act of 1987 became effective. Accordingly, we find that the appellant was correctly sentenced pursuant to the Habitual Felony Offender Act.
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] It should be noted that at the time of the offense, §13A-12-250 specified the one-mile radius mentioned above. However, the language of § 13A-12-250 was amended, effective May 19, 1989, to extend the radius to three miles.