[1] The petition was filed in this Court under the name Alan
Andrew Fuller. The case in the Court of Criminal Appeals was styled under the name Allan Andrew Fuller.
In Alan Andrew Fuller's trial, the court admitted into evidence an audio recording of an alleged confession. He was convicted, and the Court of Criminal Appeals affirmed his conviction; we granted certiorari review to determine whether the opinion of the Court of Criminal Appeals relating to the foundation to be laid for the admission of sound recordings is consistent with other cases decided by that court. While we find inconsistencies in the opinions of that court, we conclude that the court reached the correct result in this case; therefore, we affirm.
Fuller was arrested, indicted, and tried in Monroe County in relation to the death of Joe Floyd. Apparently, Fuller and Floyd were best friends and, on the day of Floyd's death, they had argued over whether Floyd had informed Fuller's wife that Fuller had taken Valium on a particular occasion. Fuller maintained that he shot Floyd in self-defense.
After Fuller's arrest, and while Fuller was in custody, he made a full statement to police officers. The statement was recorded on an audio cassette tape. At trial, Fuller's attorney objected to the State's attempt to admit the tape recording into evidence, arguing that the State had not laid the proper foundation for its admission, and, further, that the tape was not sufficiently audible.[2] After hearing in *Page 677 camera the tape and testimony from one of the police officers, the trial court overruled Fuller's objection, allowed the prosecution to play the tape for the jury, and admitted the tape into evidence. The jury convicted Fuller of manslaughter; the trial court sentenced him to 20 years' imprisonment.
The Court of Criminal Appeals affirmed Fuller's conviction; the court held that the prosecution had established a proper predicate for admitting the cassette tape and further held that any audibility problem would go to the weight accorded the evidence by the jury and not to its admissibility.
Fuller correctly asserts that caselaw from the Court of Criminal Appeals conflicts as to the proper predicate for a taped sound recording. In its opinion in this case, the Court of Criminal Appeals quotes Jackson v. State, 582 So.2d 598
(Ala.Crim.App. 1991), for the proposition that "all that is required [to admit sound recordings into evidence] is to show that the recordings are 'reliable representations of the subject sound.' " Fuller v. State, 620 So.2d 669, 672
(Ala.Cr.App. 1991). Moreover, Jackson points out that in Molinav. State, 533 So.2d 701 (Ala.Crim.App. 1988), cert. denied,489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989), the Court of Criminal Appeals changed the requirements for a proper predicate from the seven-prong test set out in Voudrie v.State, 387 So.2d 248 (Ala.Cr.App.), cert. denied, 387 So.2d 256
(Ala. 1980)[3] to the "reliable representation" standard. However, in Carraway v. State, 583 So.2d 993 (Ala.Crim.App. 1991),cert. denied, 583 So.2d 997 (Ala. 1991), the Court of Criminal Appeals held that the seven-prong Voudrie test applied to admission of sound recordings while the "reliable representation" standard applied to admission of videotape recordings. We note also, however, that in Carraway, Judge Bowen expressed the opinion that Molina had changed the required predicate to "reliable representation" for both sound and videotape recordings. Carraway, 583 So.2d at 997 (Bowen, J., concurring in the result, joined by Taylor, J.). In short, there is a conflict as to exactly which standard applies to the admission of sound recordings: the "reliable representation" standard or the seven-prong Voudrie test. We hold that either standard may apply, depending on the circumstances of a given case.
Traditionally, courts and commentators analyzing the issue of the admissibility of sound recordings, photographs, motion pictures, videotape recordings, maps, and diagrams have treated all these items in the same manner. See 3 James H. Chadbourn,Wigmore on Evidence, § 790 (1970 Supp. 1991); 2 John W. Strong, McCormick on Evidence § 214 (1992); William A. Schroeder, et al., Alabama Evidence, § 11-3 (1987 Supp. 1988); F.M. English, Annotation, Admissibility of Sound Recordings inEvidence, 58 A.L.R.2d 1024 (1958); and see, InternationalUAW-CIO v. Russell, 264 Ala. 456, 470, 88 So.2d 175, 186 (1956) (discussing the "pictorial communication" theory as applied to motion pictures); National States Ins. Co. v. Jones,393 So.2d 1361, 1366 (Ala. 1980) (discussing tape recordings); and C.P.Robbins Associates v. Stevens, 53 Ala. App. 432, 437,301 So.2d 196, 200-01 (1974) (discussing tape recordings). In fact, in National States Insurance, this Court stated, "A tape recording of a pertinent event is analogous to a photograph of a scene. A recording preserves the situation as it took place just as a photograph preserves the scene as it existed at a given point." 393 So.2d at 1367. *Page 678 
There are two theories upon which photographs, motion pictures, videotapes, sound recordings, and the like are analyzed for admission into evidence: the "pictorial communication" or "pictorial testimony" theory and the "silent witness" theory. Wigmore, supra, § 790; McCormick, supra, § 214; and Schroeder, supra § 11-3. The "pictorial communication" theory is that a photograph, etc., is merely a graphic portrayal or static expression of what a qualified and competent witness sensed at the time in question. Wigmore,supra, § 790, and McCormick, supra, § 214. The "silent witness" theory is that a photograph, etc., is admissible, even in the absence of an observing or sensing witness, because the process or mechanism by which the photograph, etc., is made ensures reliability and trustworthiness. In essence, the process or mechanism substitutes for the witness's senses, and because the process or mechanism is explained before the photograph, etc., is admitted, the trust placed in its truthfulness comes from the proposition that, had a witness been there, the witness would have sensed what the photograph, etc., records. Wigmore,supra, § 790, and McCormick, supra, § 214.
A reasonable reading of Voudrie, Carraway, Molina, and the more recent caselaw of the Court of Criminal Appeals[4] leads us to conclude that the Court of Criminal Appeals is of the opinion that the "pictorial communication" and "silent witness" theories are mutually exclusive theories, rather than alternative theories. The proper foundation required for admission into evidence of a sound recording or other medium by which a scene or event is recorded (e.g., a photograph, motion picture, videotape, etc.) depends upon the particular circumstances. If there is no qualified and competent witness who can testify that the sound recording or other medium accurately and reliably represents what he or she sensed at the time in question, then the "silent witness" foundation must be laid. Under the "silent witness" theory, a witness must explain how the process or mechanism that created the item works and how the process or mechanism ensures reliability. When the "silent witness" theory is used, the party seeking to have the sound recording or other medium admitted into evidence must meet the seven-prong Voudrie test. Rewritten to have more general application, the Voudrie standard requires:
 (1) a showing that the device or process or mechanism that produced the item being offered as evidence was capable of recording what a witness would have seen or heard had a witness been present at the scene or event recorded,
 (2) a showing that the operator of the device or process or mechanism was competent,
 (3) establishment of the authenticity and correctness of the resulting recording, photograph, videotape, etc.,
 (4) a showing that no changes, additions, or deletions have been made,
 (5) a showing of the manner in which the recording, photograph, videotape, etc., was preserved,
 (6) identification of the speakers, or persons pictured, and
 (7) for criminal cases only, a showing that any statement made in the recording, tape, etc., was voluntarily made without any kind of coercion or improper inducement.
On the other hand, when a qualified and competent witness can testify that the sound recording or other medium accurately and reliably represents what the witness sensed at the time in question, then the foundation required is that for the "pictorial communication" theory. Under this theory, the party offering the item must present sufficient evidence to meet the "reliable representation" standard, that is, the witness must testify that the witness has sufficient personal knowledge of the scene or events pictured or the sounds recorded and that the item offered accurately and reliably represents the actual scene or sounds. *Page 679 
Under either analysis, the trial court should listen to, or examine, in camera, the sound recording or other medium and should allow a party opposing admission to thoroughly cross-examine the predicating witness to test the accuracy and reliability of either the witness's memory or the process or mechanism to which the witness is testifying. Additionally, the trial court should allow the opponent of the evidence sufficient opportunity, through the discovery process, to have the sound recording or other medium tested for tampering and falsification.
Clearly, the prosecution here laid a proper predicate for admitting the sound recording in question under the "pictorial communication" theory. The following testimony appears in the record:
 "Q: [By Mr. Pearson, deputy district attorney]: Now how did you take this statement?
 "A: [By Larry Ikner, an investigator present when Fuller gave his statement]: I recorded it on a tape recorder.
"Q: Whose tape recorder is it?
"A: It belongs to the district attorney's office.
"Q: Have you used this tape recorder before?
"A: I have.
"Q: How many times?
"A: Hundreds of times.
 "Q: Hundreds of times. And [you have] always been the one that [has] used it, are you familiar with it, and does it record the voices that were spoken there in this conversation?
"A: Yes, sir.
". . . .
 "Q: Now, since this conversation — And y'all put everything on tape, is that correct?
"A: Yes, sir.
 "Q: Since this tape has been made . . . have you gone back and listened to the tape itself?
"A: I have.
 "Q: And does this tape that we have — [interruption to have the cassette tape marked for identification]
 "Q: And I'll let you look at State's Exhibit No. Nine and you say you have played it back and listened to it; is that correct?
"A: Yes, sir.
 "Q: Does that tape accurately depict — portray and depict the actual conversation that was held there in the Monroe County jail on that occasion?
"A: It does."
(R. at 101-03; emphasis supplied.)
Based on the foregoing, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY, and INGRAM, JJ., concur.
[2] Because we granted certiorari review to address the conflict in caselaw concerning foundational requirements for admissibility, we pretermit any discussion of audibility. We note, however, that partial inaudibility, or lack of clarity, as the case may be, affects the weight afforded the evidence and not its admissibility.
[3] The seven-prong test espoused in Voudrie is as follows:
 "(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement."
Voudrie, 387 So.2d at 256 (quoting Annot., 58 A.L.R.2d 1024, at 1027-28).
[4] See, e.g., Ross v. State, 555 So.2d 1179
(Ala.Crim.App. 1989), Jackson v. State, 582 So.2d 598
(Ala.Crim.App. 1991), and Strother v. State, 587 So.2d 1243
(Ala.Crim.App. 1991).