The appellant, James Richard Barnett, Jr., was convicted of two counts of distributing a controlled substance, marijuana, in violation of § 13A-12-211. He was sentenced to two concurrent terms of 5 years in prison.
The state's evidence tended to show that in the early months of 1992 Agent John Albert Smith of the Alcoholic Beverage Control *Page 529 
Board was investigating drug activity in the Montgomery area. He was using an informant to conduct controlled buys, and he would monitor the sale of the illegal drugs to the informant. The first controlled buy occurred on February 18, 1992, when the informant telephoned the appellant, a United States postal service employee, and asked if she could purchase some marijuana from him. After the appellant responded that she could, the informant telephoned Agent Smith. Smith had the informant telephone the appellant again so that the call could be tape-recorded. The informant agreed to come to the appellant's house at 1722 Sanford Street that evening to purchase a quarter of an ounce of marijuana. When the informant and Smith arrived at the appellant's house that evening, they found no one home. They left and telephoned the appellant. He assured the informant that he was ready to deal and that he would be home later. Smith and the informant then went back to the appellant's house. Smith searched the informant before she went inside the house and he gave her marked money with which to purchase the drugs. The appellant sold the marijuana to the informant. The informant left the house and handed the drugs to Smith.
The second charge against the appellant arises out of a transaction that occurred on March 24, 1992. The informant again telephoned the appellant and told him that she wanted to purchase an ounce of marijuana. This telephone call was recorded. Agent Smith could not get the "buy money" needed to purchase an ounce of marijuana so the informant telephoned the appellant and arranged to buy one-half ounce of marijuana. This telephone call was also recorded. She went to the appellant's house and purchased the marijuana. She gave the drugs to Smith.
 I
The appellant initially contends that the tape recordings of the telephone conversations in which the appellant agreed to sell drugs and a tape recording of one of the drug transactions should not have been received into evidence because a sufficient foundation was not laid prior to these items being received into evidence. The appellant specifically argues that the requirements of United States v. Brown, 604 F.2d 557 (8th Cir. 1979), were not met. Specifically, he argues that there was no testimony presented to prove the following:
 "(1) That the recording device was capable of taping the conversation now offered in evidence.
 "(2) That the operator of the device was competent to operate the device.
 "(3) That the recording is authentic and correct.
 "(4) That changes, additions or deletions have not been made in the recording.
 "(5) That the recording has been preserved in a manner that is shown to the court.
"(6) That the speakers are identified.
 "(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement."
604 F.2d at 560. The Brown test is identical to the test articulated by this court in Voudrie v. State, 387 So.2d 248
(Ala.Cr.App.), writ denied, 387 So.2d 256 (Ala. 1980). However, the Voudrie test has specifically been rejected.
 "This court, in Molina v. State, 533 So.2d 701
(Ala.Cr.App. 1988), abolished the rigid prerequisites necessary for establishing a chain of custody for receiving a tape recording into evidence. Now, all that is required is to show that the recordings are 'reliable representations of the subject sound.'"
Jackson v. State, 582 So.2d 598, 600 (Ala.Cr.App. 1991), quoting in part Ross v. State, 555 So.2d 1179, 1182 (Ala.Cr.App. 1989). (Emphasis added.) See also Ephraim v. State, 627 So.2d 1102
(Ala.Cr.App. 1993); Mullis v. State, 627 So.2d 1078
(Ala.Cr.App. 1992); Strother v. State, 587 So.2d 1243
(Ala.Cr.App. 1991). Recently, the Alabama Supreme Court ruled that either the Voudrie or the Molina v. State, 533 So.2d 701
(Ala.Cr.App. 1988), test may be used for establishing a foundation for audio recordings and videotape recordings. Exparte Fuller, 620 So.2d 675 (Ala. 1993). *Page 530 
Agent Smith testified that prior to making each recording, he checked the recording equipment to determine whether it was working properly. In regards to the telephone conversations, Smith stated that he was listening to the informant's part of the conversation as it occurred and that when the telephone conversation was over, he played the recording in the informant's presence. Regarding the recording of the actual drug transaction, Smith stated that he listened to it as it occurred and that he played the tape immediately after the transaction and that the recording accurately portrayed the transaction. He kept the recordings in his possession from the time they were made until trial. This testimony forms a sufficient predicate to satisfy Molina. The trial court did not err in receiving the tape recordings into evidence.
 II
The appellant next contends that the court erred in allowing Agent Smith to testify to the following concerning one telephone conversation between the informant and the appellant.
 "Q — (Prosecutor) Did you listen in on the conversation?
 "A — No, ma'am. At that time, the recorder, when you hook it up, it's a suction cup that goes onto the receiver, and it kills the speaker. I could understand what she was saying but I couldn't hear the other end, except just by getting real close. Then after she hung up the phone, of course I played it back then.
"Q — You heard it then?
"A — Yes, ma'am.
 "Q — Okay. Did you verify again that the recorder was working properly?
"A — Yes, ma'am.
"Q — Okay. Did she listen to it with you?
"A — Yes, ma'am, she was still sitting there.
 "Q — Okay. And did she say there was any — whether there was any material difference in that tape?
"By (Defense Counsel): Object to hearsay.
"By the Court: Overruled.
"A — No, ma'am."
The appellant contends that Agent Smith was allowed to testify as to what the informant had told him about what the appellant had said during the telephone conversation. We agree that this testimony was offered as proof of the matter stated and that it was inadmissible hearsay. However, the informant testified later at trial about the content of the telephone conversation with the appellant. Defense counsel had an opportunity to cross-examine the informant about the conversation. Any error that may have occurred based on the court's receipt of this hearsay testimony was rendered harmless when the informant subsequently testified to the same information. Rule 45, A.R.App.P.
 III
The appellant further contends that the trial court erred in allowing the state to present evidence of a collateral offense not charged in the indictment. Specifically, he contends that the state should not have been allowed to introduce evidence that when he was arrested, six months after the latter transaction, he was in possession of marijuana. The appellant maintains that the state may not introduce evidence of a crime that occurred subsequently to the charged crime to show the predisposition of the accused when the accused has raised the defense of entrapment.
The following occurred during the questioning of Agent John Smith:
 "Q [prosecutor] — [W]ere you present when [the appellant] was arrested?
"A — Yes, ma'am.
"Q — Where did this occur?
 "A — At 6701 Winton Blount Boulevard, which is the post office complex out at [Auburn University at Montgomery].
 "Q — Okay. And when he was arrested, was there any search of his vehicle?
"A — Yes, ma'am.
 "Q — Okay. And did you find any controlled substances in the vehicle?
 "By Mr. Pool [defense counsel]: Object to that, Judge.
"By the Court: Overruled.
"A — Yes, ma'am. *Page 531 
"Q — What did you find?
 "A — We found a marijuana cigarette and some roaches."
After this evidence was presented, defense counsel made only a general objection. Counsel did not specify that the reason for his objection was that the evidence of that act was not admissible to show predisposition because the act occurred after the charged offense. A general objection which does not specify grounds preserves nothing for appellate review.Whitley v. State, 607 So.2d 354 (Ala.Cr.App. 1992). A "trial judge will not be placed in error on grounds not assigned in an objection." Cook v. State, 384 So.2d 1158 (Ala.Cr.App.), cert. denied, 384 So.2d 1161 (Ala. 1980).
When the appellant relies on the defense of entrapment, the state is obliged to show that the appellant was predisposed to commit the act. An entrapment defense is not effective if the state proves that the accused had a predisposition to commit the crime charged.
 "In demonstrating predisposition, the government is not restricted to using past offenses or reputation evidence. Evidence of predisposition may also include the readiness or eagerness of the defendant to deal in the proposed transaction, or post-crime statements such as 'if you need more, I'll be here.' United States v. Jenkins, 480 F.2d 1198 (5th Cir. 1973)."
United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir. 1985), cert. denied, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789
(1986); United States v. Dickens, 524 F.2d 441 (5th Cir. 1975), cert. denied, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819
(1976).
Showing that the accused committed a crime six months after the charged offense stretches the outer limits of probative value and is on the borderline of relevance. However, based on the circumstances of this case, we hold that allowing evidence of the post-crime collateral offense was not error.
 IV
The appellant next argues that the trial court erred in dismissing one of the jurors. After the jury had been selected, but prior to trial, a juror saw the appellant's family in the hallway. Seeing the appellant talking to some of his relatives, the juror realized that he knew the appellant's family. The juror brought this fact to the court's attention. The court questioned the juror. The juror said that the fact that he knew some of the appellant's family would affect his ability to objectively hear the case. After some discussion, the trial court excused this juror. The trial court gave the appellant the choice of re-selecting the jury or of going ahead with the 11 remaining jurors. The appellant himself stated that he wished to continue. The actions of the trial court were correct.
As the appellant correctly argues the fact that a juror knows some of the family members of the accused is not a statutory reason for excluding the prospective juror for cause. §12-16-150, Code of Alabama 1975. However, as Judge Bowen stated in Nettles v. State, 435 So.2d 146 (Ala.Cr.App.), aff'd,435 So.2d 151 (Ala. 1983):
 "To justify a challenge of a juror for cause there must be a statutory ground (Ala. Code Section 12-16-150 (1975)), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court."
Nettles, 435 So.2d at 149. (Emphasis added.)
 "In Knop v. McCain, 561 So.2d 229 (Ala. 1989), the Supreme Court of Alabama stated that:
 " 'Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132
(1978); see Willingham v. State, 262 Ala. 550, 80 So.2d 280 (1955); Mahan v. State, 508 So.2d 1180
(Ala.Cr.App. 1986). This determination again is to be based on the juror's answers and demeanor and is within the discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers *Page 532 
and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence.' "
Mann v. State, 581 So.2d 22, 25 (Ala.Cr.App. 1991), (citations omitted).
The juror who was excused in this case stated that he could not fairly try the case. The trial court had the opportunity to review his answers and to observe his demeanor. The fact that a juror says that he cannot "well and truly try the issues" provides the ultimate ground of disqualification. It was not error to excuse this juror.
 V
The appellant next argues that error occurred during the following questioning of Agent Smith:
 "Q — Let me ask you this, Mr. Smith, is part of the process of entrapment or trying to entrap someone into doing something illegal, winning over that person's confidence or trying to win over that person's confidence? Is that part of the process?
 "By Ms. Harris (Prosecutor): Judge, I object to the form of the question.
"By the court: Sustained."
The appellant argues that evidence concerning the entrapment defense was admissible and that, therefore, the trial court erred by sustaining the prosecutor's objection. Here the prosecution's objection was not to the answer that the question sought to elicit but to the way the question was asked. Specific objections waive all others not specified.Cook, supra. Furthermore, counsel did not rephrase the question or attempt to ask any other question regarding this evidence. We find no reversible error here. Cook; Rule 45, A.R.App.P.
 VI
The appellant next presents several alleged grounds for reversal that were not preserved for this court's consideration. Initially, the appellant argues that error occurred during the questioning of one of the state's witness. However, the error which the appellant alleges occurred does not exist. The record shows that when the objection was made to the witness's testimony the trial court sustained the appellant's objection. Therefore, the appellant has no adverse ruling from which to appeal. Johnson v. State, 601 So.2d 1147
(Ala.Cr.App. 1992).
The appellant further contends that two witnesses for the state should not have been allowed to testify because, he says, the jury panel was not asked during voir dire if any member knew the two witnesses. As the state correctly argues, this specific argument was not raised to the trial court at the time of the witnesses' testimony. It was brought to the court's attention in the appellant's motion for new trial. This is too late. The appellant's objection to the two witness' testimony was untimely. Leonard v. State, 551 So.2d 1143
(Ala.Cr.App. 1989).
 VII
Last, the state has filed a motion requesting that this court remand this cause to the Circuit Court for Montgomery County so that the appellant's sentences could be enhanced under §13A-12-250, because the sale of the controlled substances occurred within three miles of a school.
There was evidence presented that the two sales occurred within three miles of a school. The trial court also stated at the hearing that the crimes occurred within three miles of a school. However, the appellant was sentenced to only five years on each count. As the state correctly argues in its motion to remand, the minimum sentence which a defendant can receive for selling a controlled substance within three miles of a school is seven years. § 13A-12-211; § 13A-5-6; § 13A-12-250. We have previously held that the enhancement portion of a sentence imposed under § 13A-12-250 may not be served concurrently withany other sentence imposed. Scott v. State, 627 So.2d 1131
(Ala.Cr.App. 1993). (Emphasis added.)
This cause is remanded to the Circuit Court for Montgomery County so that the appellant may be resentenced, and his two sentences enhanced pursuant to § 13A-12-250. Due return should be filed in this court *Page 533 
no later than 21 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.