[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 464 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 465 
This is an appeal from a judgment in a postdivorce proceeding in the Baldwin Circuit Court.
The parties were divorced in the State of Washington on January 8, 1992. Jodie C. Larson ("the mother"), who now resides in Baldwin County, was granted permanent custody of the couple's two minor children. Michael A. Stinson ("the father") presently resides in California.
In November 1996, the Baldwin Circuit Court ("the trial court") found that the father was in debt to the mother in the amount of $9,255.08. On June 1, 2001, the trial court entered a judgment determining that, as of May 25, 2001, the father was $20,000 in arrears in paying child support, day-care expenses, medical bills, and marital debts as required in the parties' divorce judgment.
In the years following the divorce, both parties have filed numerous motions and countermotions. In an attempt to curtail the fighting between the parties and its negative impact upon their minor children, the trial court, in its June 2001 judgment, directed the parties not to speak in a negative fashion about each other. On June 6, 2002, the trial court ordered "without exception that no conversations shall take place with the minor children concerning custody, proceedings, court hearing, child support issues, visitation issues, the payment of medical bills for the children, or any other subject concerning legal issues surrounding these children."
During the summer and fall of 2002, the mother began to believe that the father was violating the court's order during telephone conversations between the father and the parties' oldest child. The mother subsequently began recording those telephone conversations. She also downloaded an electronic-mail message that the father had sent to the oldest child. Based in part upon the content of the telephone conversations and the electronic-mail message, the mother became convinced that the father was trying to undermine her authority as the custodial parent. In May 2002, the mother filed motions to both temporarily and permanently terminate the children's visitation with the father. On June 4, 2002, the father filed his response to the mother's motions to terminate visitation, a motion seeking rule nisi, and a motion to modify custody. On July 10, 2002, the father filed a motion for contempt against the mother and sought an award of attorney fees. On February 27, 2003, the mother filed a motion for contempt against the father for his alleged violation of the court's June 1, 2001, judgment and its June 6, 2002, order; a motion to dismiss the father's petition to modify custody; and a motion seeking a recalculation of child support. On March 5, 2003, the father filed an motion to compel visitation instanter and a motion for an instanter psychological evaluation for the oldest child; the motion for a psychological evaluation was granted on April 11, 2003.
The trial court held an ore tenus hearing on May 12, 2003. The court heard testimony from the oldest child, the mother, the father, the father's current wife, the *Page 466 
maternal grandmother, a child therapist, and the oldest child's school headmaster. The trial court also admitted into evidence five audiotapes, an electronic-mail message, psychological reports, and various other exhibits. On June 4, 2003, the trial court entered its judgment. Based upon its findings of fact, the trial court determined (1) that the custody of the parties' minor children would remain with the mother; (2) that the father's monthly child support payment of $257 would not be increased; (3) that the father had incurred a child support arrearage of $13,000, and was thereby ordered to pay an additional $250 per month toward that arrearage; and (4) that, upon the trial court's review of audiotape recordings of conversations between the father and his oldest child, the father was in contempt for violating a previous court order and was ordered to serve 5 days in jail for each determined violation, for a total of 20 days.
The father appeals, raising four issues and several sub-issues that may be properly restated as presenting the following two questions for review: (1) whether the trial court erred in holding that the audiotape recordings of telephone conversations between the oldest child and the father were properly admissible into evidence; and (2) whether the trial court abused its discretion by increasing the father's arrearage-payment schedule.
The father first argues that the trial court erred when it determined that five previously recorded telephone conversations could be admitted into evidence. Specifically, the father contends (1) that the recordings violated state and federal wiretapping statutes; (2) that the mother's vicarious consent to the recording of the conversations was unlawful; and (3) that the proper predicate was not made before the trial court admitted the recordings into evidence.
The father argues that the tape recordings of telephone conversations between him and the oldest child violated the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510
et seq., and Ala. Code 1975, §§ 13A-11-30 and 13A-11-31(a). We note that the facts as to this specific issue are not in dispute. Therefore, the trial court's ruling carries no presumption of correctness, and this court's review is de novo. Ex parteGraham, 702 So.2d 1215, 1221 (Ala. 1997).
The Electronic Communications Privacy Act of 1986, part of Title III of the Omnibus Crime Control and Safe Streets Act,[1] prohibits the interception of, and introduction into evidence of, telephone communications unless one party to the communications gives consent or a court order is obtained that authorizes the interception and recording of the telephone conversations. 18 U.S.C. §§ 2511 and 2515. However, the Act also contains an extension-telephone exception set out in18 U.S.C. § 2510. A majority of the federal courts have held that18 U.S.C. § 2510(5)(a)(i) exempts a parent's use of an extension telephone to audit a minor child's telephone conversation. E.g., Janecka v.Franklin, 843 F.2d 110, 111 (2d Cir. 1988); Newcomb v. Ingle,944 F.2d 1534, 1536 (10th Cir. 1991); Scheib v. Grant,22 F.3d 149, 154 (7th Cir. 1994). Those courts have also held that the exemption applies to a custodial parent's use of an extension telephone *Page 467 
to record a child's telephone conversation with the noncustodial parent. The rationale behind these holdings is that a parent's recording of a telephone conversation from an extension telephone is a "distinction without a difference" from the parent's listening to a telephone conversation on an extension telephone.Anonymous v. Anonymous, 558 F.2d 677, 679 (2d Cir. 1977).
Moreover, some federal courts have also found that the federal statute's one-party consent requirement is satisfied in circumstances whereby consent comes from the parent vicariously on behalf of his or her minor child. E.g., Pollock v. Pollock,154 F.3d 601 (6th Cir. 1998); Thompson v. Dulaney,838 F.Supp. 1535, 1544 (D.Utah 1993). In Pollock, the court held that the secret recording of a 14-year-old girl's telephone conversations with the noncustodial parent by a custodial parent within the custodial parent's home was permissible if the consenting parent demonstrated "a good faith, objectively reasonable basis for believing such consent was necessary for the welfare of the child." 154 F.3d at 610. The court stressed that it would be "problematic" for the defense to be limited to children of a certain age "as not all children develop emotionally and intellectually on the same timetable." Id.
After Pollock, several other federal district and state courts have considered the question, and most have ruled that the custodial parent properly consented vicariously to the recording of their minor child's conversations when the recording was motivated by a genuine concern for the child's welfare. E.g.,Wagner v. Wagner, 64 F.Supp.2d 895, 896 (D.Minn. 1999); Marchv. Levine, 136 F.Supp.2d 831, 849 (M.D.Tenn. 2000), aff'd,249 F.3d 462 (6th Cir. 2001); see also State v. Morrison,203 Ariz. 489, 491, 56 P.3d 63, 65 (Ct.App. 2002). In light of the fact that the minor child was in the mother's custody at the time of the recording and the recording was accomplished through the use of an extension telephone, we conclude that the recording of the minor child's telephone conversations was proper under the provisions of the Electronic Communications Privacy Act of 1986 as that statute has been interpreted by caselaw. Consequently, we find no violation of 18 U.S.C. § 2510 et seq.
The father also contends that the mother's recording of the minor child's telephone conversations violated Ala. Code 1975, §13A-11-31(a), which prohibits the use of any device to "eavesdrop" upon a private conversation. As under the federal Electronic Communications Privacy Act of 1986, consent of one or more of the parties is a defense to a charge of violating §13A-11-31(a), Ala. Code 1975. Commentary to § 13A-11-31; Alonzov. State ex rel. Booth, 283 Ala. 607, 219 So.2d 858, 869 (1969).
In a case of first impression, this court directly addressed the issue of "vicarious consent" in Silas v. Silas,680 So.2d 368, 370 (Ala.Civ.App. 1996). In that case, we held that under §13A-11-31(a), a parent may give "vicarious consent" on behalf of a minor child to the recording of telephone conversations with the other parent where that parent has a good-faith, objectively reasonable basis for believing that the minor child is being "abused, threatened or intimidated" by the other parent. Silas, 680 So.2d at 372.
The father asserts that our holding in Silas is not applicable because the minor child in Silas was incapable of giving consent. Conversely, the father says, the parties' oldest child was capable of giving consent, and the oldest child testified that he believed that the recording of his telephone conversations amounted to an invasion of privacy. The father further contends *Page 468 
that no evidence was presented to the trial court that showed the child was being "abused, threatened, or intimidated." Thus, the father argues that the mother failed to meet the narrow standards espoused in Silas.
In Silas, the child was 7 years old; the parties' oldest child in this case was 15 years old at the time that the recording began. However, that is a distinction without legal significance; under Alabama law, a person, who is under the age of 19 years, has not yet reached the age of majority so as to have the right to contract or otherwise give legally binding consent. See § 26-1-1, Ala. Code 1975. Moreover, notwithstanding the age of the child, a minor child's own ability to consent should not be viewed as "mutually exclusive" of a custodial parent's ability to "vicariously consent" on the child's behalf.Pollock, 154 F.3d at 608 (citing Pollock v. Pollock975 F.Supp. 974, 978 n. 2 (W.D.Ky. 1997)).
A review of the record reveals that no direct evidence was presented to the trial court that indicated the parties' oldest child was being specifically "abused" or "threatened" by his father, the noncustodial parent. However, we cannot agree with the father that no evidence indicated that the parties' oldest child was not being "intimidated." "Intimidate" is defined inMerriam-Webster's Collegiate Dictionary as "to make timid or fearful" or "to compel or deter." Merriam-Webster's CollegiateDictionary at 656 (11th ed. 2003). In this case, the mother testified that she believed the father was manipulating the oldest child and undermining her authority.
 "Q. Tell me why you felt it necessary to begin recording telephone conversations between [the father] and his son?
 "A. Because of [the child's] behavior, actions and words that he said while he was talking to his father. He would become very upset and he would yell at me. He would tell me he didn't have to listen to me. One particular phone conversation, and this is one that kind of spurred me that I need to find out what he is saying to him, he said, my dad pays you three thousand dollars a month child support, so I should get to talk to him as late as I want."
The mother also testified that the parties' oldest child had been exhibiting significant behavioral problems, and that she had had to file a petition to have him declared a child in need of supervision. The mother testified that the child had tested positive for marijuana; that he had taken her car without her permission and gone "joy-riding" one night; and that his behavior had become so disruptive on one occasion that the police had been telephoned to come out to the home. Testimony also showed that the child had gotten into trouble for "egging" a teacher's house and that his grades were spiraling downward. The following electronic-mail message from the father, which was intercepted by the child's mother and admitted into evidence, shows manipulation on the part of the father over the child:
 "Oh, word of advice, I would never tell you to stop going to school but if you were to tell everyone that you are old enough to stop going as of this coming spring break and told them so now I bet it would have an impact.
 "I'd just stop going period until she signs a piece of paper that says she will let you and your brother attend your dad's wedding. [I]f you do that I'll alert the lawyer that there's a problem in the household but you have to stick to it and if they let you go to [M]aui and our wedding then you need to go back to school like nothing happened.
 "It's called civil disobedience and it's been known to work." *Page 469 
In light of evidence concerning the child's delinquent behavior and the written and oral communications directed to the child by the father, we conclude that the trial court could properly have determined that the mother had a good-faith basis to believe that the minor child was being "intimidated" by the father; therefore, it was permissible under § 13A-11-31(a), Ala. Code 1975, as interpreted in Silas, for the mother to "vicariously consent" on behalf of the child to the recording of his telephone conversations.
In addition, the father also argues that even if the mother could "vicariously consent" to the tape recordings of the telephone conversations between the father and the parties' oldest child, he contends that the mother failed to lay a proper predicate for the admission of the recordings.
Our Supreme Court has recognized two distinct theories that are to be used in determining whether a proper foundation has been laid for the admissibility of photographs and electronic recordings: the "pictorial communication" theory and the "silent witness" theory. Ex parte Fuller, 620 So.2d 675, 677 (Ala. 1993). Under the "pictorial communication" theory, an individual who was present at the time the recording was made can authenticate that recording by stating that it is consistent with that person's recollection. 620 So.2d at 678. "If there is no
qualified and competent witness who can testify that the sound recording or other medium accurately and reliably represents what he or she sensed at the time in question, then the `silent witness' foundation must be laid." Id. In civil cases, under the "silent witness" theory, a foundation is laid by offering evidence as to the following elements: (1) a showing that the device that produced the item was capable of recording what the witness would have seen or heard had the witness been present at the event recorded; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that no changes, additions, or deletions were made; (5) a showing of the manner in which the item was preserved; and (6) an identification of the speakers. 620 So.2d at 677. Under either the "silent witness" theory or the "pictorial communication" theory for laying the foundation for admission of a sound recording, the trial court should listen to the recording in camera and should allow the party opposing admission to thoroughly cross-examine the witness.Id. at 679; see also 1 Charles W. Gamble, McElroy's AlabamaEvidence § 123.02 (5th ed. 1996).
Our review of the record reveals that the mother produced, in advance, copies of the audiotapes to the father for his listening, examination, inspection, and review. The mother testified that she had recorded the tapes on a device she had bought from a Radio Shack retailer. She testified that she knew how the recording device worked. She denied splicing or falsifying the tape recordings in any way. She testified that she recognized the voices of the father and the parties oldest child on the recorded conversations. In addition, the trial court reviewed the tape recordings in camera and the father's attorney was allowed to thoroughly cross-examine the mother regarding the tape recordings. Accordingly, we conclude that the mother's legal counsel did establish a sufficient predicate for the admission of the audiotape recordings into evidence under the "silent witness" theory set forth in Fuller.
Moreover, even if the tape recordings had been improperly admitted into evidence, there was sufficient evidence from which the trial court could have *Page 470 
deemed the father to be in contempt. The father admitted that he had spoken with the children about the court proceedings. In addition, the parties' oldest child also testified that the father had spoken with him about "court stuff," although we note that the child stated that the mother had also spoken with him about court proceedings.
The determination of whether a party is in contempt of court rests entirely within the sound discretion of the trial court, and, "`absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.'" Gordon v.Gordon, 804 So.2d 241, 243 (Ala.Civ.App. 2001) (quoting Stackv. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994)). In light of the audiotape evidence, as well as other evidence adduced at trial, we find no abuse of discretion or palpable error on the part of the trial court in this regard.
The father next argues that the trial court abused its discretion when it increased his child support arrearage payments. Specifically, the father contends that no request for modification had been made, that the issue had not been tried by consent, and that no evidence was presented to support the modification.
Our standard of review as to that issue is highly deferential. "Matters related to child support, including subsequent modifications of a child-support order, rest soundly within the trial court's discretion, and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and thus is plainly and palpably wrong." Bowen v. Bowen,817 So.2d 717, 718 (Ala.Civ.App. 2001).
The record reflects that the mother filed a motion for a child-support recalculation in February 2003. That motion remained pending before the trial court at the time of the ore tenus hearing on May 12, 2003. We note that the trial court has a duty to grant whatever relief is appropriate regardless of whether the party specifically demanded such relief in the party's pleadings. Rule 54(c), Ala. R. Civ. P.; Johnson v. City ofMobile, 475 So.2d 517, 519 (Ala. 1985).
"The trial court has discretion to set a reasonable arrearage payment schedule commensurate with the parent's ability to pay."Henderson v. Henderson, 680 So.2d 373, 375 (Ala.Civ.App. 1996). Indeed, this court has held that in cases where a substantial arrearage is owed, the trial court may abuse its discretion if it fails to order a payment toward that arrearage that is large enough to satisfy the debt within a reasonable period of time.Id. The father had previously been ordered to pay a sum of $100 per month toward the arrearage. At that rate, it would have taken the father more than a decade to discharge the $13,000 arrearage. The evidence at trial established that the father was disabled, although only partially (i.e., 5%). Even though the trial court did not impute to the father a larger amount of income than he claimed (i.e., $700 per year working for his wife), the trial court did take notice of his apparent upscale lifestyle, noting in its judgment that the father "can afford the `extras' in life." Testimony at the hearing also revealed that the father had taken several long plane trips, had wrestled with his boys, was constructing an addition to his home, and had designed award-winning Internet Web sites. Based upon the witnesses' testimony and the evidence presented, the trial court could have concluded that the father had vastly underestimated his income and his ability to earn a living to support the parties' two children. Consequently, we conclude that the *Page 471 
trial court did not abuse its discretion by increasing the father's arrearage payment to $250 per month. Based upon the foregoing facts and authorities, the trial court's judgment is due to be affirmed. The mother's request for an award of attorney fees on appeal is granted in the amount of $1,500.
AFFIRMED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] Title III was enacted in 1968 to protect the privacy of wire and oral communications and to regulate the conditions under which interceptions of such communications would be allowed. The original act prohibited only the intentional interception of wire or oral communications. As other methods of communication became more commonplace, Congress adopted the Electronic Communications and Privacy Act of 1986 to prohibit the intentional interception of electronic communications.